Filed 3/21/17  Certified for publication 4/19/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re EDWARD B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. EDWARD B., Defendant and Appellant. | A148887 (Contra Costa County Super. Ct. No. J15-00555) |

Defendant Edward B. was adjudged a ward of the court pursuant to Welfare and Institutions Code section 602, subdivision (a),[1] after he admitted a count of misdemeanor grand theft from the person (Pen. Code, § 487, subd. (c)).  The juvenile court committed Edward to a rehabilitation center for six months and imposed conditions of probation. Edward raises three issues on appeal.  He challenges a condition of his probation that prohibits him from associating with known gang members and gang associates, arguing that the condition is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).  He also challenges a probation condition that prohibits his presence on a school campus unless he is enrolled, arguing that it is unconstitutionally vague because it lacks an "express knowledge requirement."  And he argues that the juvenile court erred by failing

---

[1] Further undesignated references are to the Welfare and Institutions Code.

1

to specify his maximum term of confinement and calculate credits for time served. We will strike the gang condition, affirm the school campus condition, and remand for the juvenile court to specify the maximum term of confinement and calculate credits for time served.

## FACTUAL AND PROCEDURAL BACKGROUND

We draw our brief statement of the facts from a report prepared by the Contra Costa County Probation Department. On the afternoon of May 20, 2016, a Berkeley police officer, while driving, saw a woman, age 66, "in a panic, yelling and running north." The officer looked to the north and saw Edward with a blue bag in his hand. The officer turned on his lights and siren and saw Edward drop the bag on the sidewalk. The officer followed Edward as he fled. Eventually, Edward stopped running, was detained, and "spontaneously inquired, 'How much time am I going to get for this?' " The victim identified Edward as the person who snatched her bag from her hand, breaking its handle, and witnesses also identified Edward as the person involved. Edward was then just shy of his 15th birthday.

On May 24, 2016, the Alameda County District Attorney filed a wardship petition pursuant to section 602, subdivision (a), alleging that Edward committed robbery (Pen. Code, § 211). At the detention hearing the next day, the petition was amended to allege misdemeanor grand theft from the person (Pen. Code, § 487, subd. (c)), and Edward admitted the allegation. The case was transferred to Contra Costa County, where Edward resided.

At the dispositional hearing on June 28, 2016, Edward was adjudged a ward of the court, placed on probation, and ordered to complete a six-month residential program at the Orin Allen Youth Rehabilitation Facility (the ranch), to be followed by a 90-day conditional release/parole period. Edward was ordered detained in Juvenile Hall "forthwith pending delivery to" the ranch. The juvenile court imposed a number of probation conditions, including a gang condition: "The minor shall not knowingly associate with anyone known to the minor to be a gang member or associated with a gang, or anyone who the [probation officer] informs the minor to be, a gang member or

2

associated with a gang."[2] The juvenile court also imposed a school campus condition: "[T]he minor is not to be on a school campus unless he's enrolled." Edward timely appealed.

## DISCUSSION

A. *Probation Conditions Imposed by the Juvenile Court*

    1. *Applicable Law*

The juvenile court is authorized to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) We review the juvenile court's probation conditions for abuse of discretion. (*In re P.A.* (2012) 211 Cal.App.4th 23, 33.)

Well-established principles guide our review. " 'The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents' [citation], thereby occupying a 'unique role . . . in caring for the minor's well being.' [Citation.] . . . [¶] The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults. '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults." ' [Citation.] . . . Thus, ' "a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court." ' [Citations.]" (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).)

The juvenile court's discretion in imposing conditions of probation is broad but not unlimited. (*In re D.G.* (2010) 187 Cal.App.4th 47, 52 (*D.G.*).) Our Supreme Court has stated criteria for assessing the validity of a probation condition: Upon review, "[a]

---

    [2] The juvenile court orally pronounced the condition as follows: "I am going to impose that he not associate with anyone he knows to be a gang member or associated with a gang." The Attorney General does not oppose Edward's argument that the written version of the probation condition should govern here. The difference between the oral and written versions does not affect our analysis.

3

condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality[.]' " (*Lent, supra,* 15 Cal.3d at p. 486.) "Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Ibid.*) Adult and juvenile probation conditions are reviewed under the *Lent* criteria. (*D.G.*, *supra*, 187 Cal.App.4th at p. 52.) A condition that would be improper for an adult is permissible for a juvenile only if it is tailored specifically to meet the needs of the juvenile. (*Id.* at p. 53.) In determining reasonableness, courts look to the juvenile's offenses and social history. (*Ibid.*)

The reasonableness standard set forth in *Lent* is not the only limit on the juvenile court's discretion. Probation conditions are subject to constitutional challenges on the grounds of vagueness. "A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' " (*People v. Olguin* (2008) 45 Cal.4th 375, 382, quoting *People v. Bravo* (1987) 43 Cal.3d 600, 606.) "Under the void for vagueness doctrine, based on the due process concept of fair warning, an order ' "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' ([*In re*] *Sheena K.*[ (2007)] 40 Cal.4th [875,] 890 [(*Sheena K.*)].) The doctrine invalidates a condition of probation ' " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' (*Ibid.*) By failing to clearly define the prohibited conduct, a vague condition of probation allows law enforcement and the courts to apply the restriction on an ' " '*ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " ' (*Ibid.*)" (*Victor L.*, *supra*, 182 Cal.App.4th at p. 910.)

With these principles in mind, we turn to Edward's challenges to his probation conditions.

4

2.      *Gang Condition*

Edward argues, and the Attorney General agrees, that the gang condition is unreasonable because it prohibits legal conduct and because, based on the facts and Edward's social history, it is neither related to Edward's offense nor reasonably related to preventing his future criminality. We agree with the parties, and therefore we will strike the gang condition.

a.      *Additional Background*

Before the dispositional hearing, the Contra Costa County Probation Department prepared a report recommending that the juvenile court commit Edward to the ranch and impose various probation conditions, including the requirement that Edward not associate with gang members or gang associates. The recommendation included other gang-related terms as well, including that Edward not participate in gang activity or possess or display gang insignia.

The record here, however, includes no evidence that Edward is or was a gang member, or that his current friends are affiliated with gangs. According to the probation report, Edward's father "stated one of [Edward's] friend's, whom he believes his son, no longer associates with, has some involvement with a criminal street gang." The only other evidence in the record that might suggest Edward's offense was gang related is Edward's immediately asking the arresting officer how much time he would have to serve, and a description of an interview with Edward's father, who "stated one of the minor's friend's, mother's, [sic] informed the minor's stepmother that an 'older individual' drove the minor and her son around prior to the instant offense. The minor's father also stated he believes his son committed the instant offense because he was directed to do so." With no basis other than these statements, the probation report observes that, "It should be noted, older gang members tend to seek out younger juveniles to commit crimes for their gang because the consequences will be less punitive due to their juvenile status. The court should be made aware, the minor's first question of the arresting officer following the instant offense concern was, 'how much time,' he would have to serve. The minor's statement displays a level of sophistication and planning, that

5

more impulsive and less sophisticated youth do not typically respond with." Edward had not been referred to the probation department until this incident.

At the dispositional hearing, Edward's counsel objected to the imposition of gang terms, arguing that the record was not sufficient to impose them. The judge asked the court probation officer and the district attorney for their opinions, stating that he shared Edward's counsel's concerns about the gang terms. The court probation officer said there were only "two areas in the report [by the Probation Department] that speak to the probation officer's concern with the minor conceivably being associated with a gang. The problem is that there's no direct correlation. Only in one instance, there is a reference from the minor's father of what he believes might be the case. And . . . an assumption made about what the minor stated when he was detained on the street and what—how that may correlate into an association with gangs. But none of them are direct, and the court officer, quite frankly, doesn't believe that it's sufficient, although I am saying those are the only two incidents that I can find in the report that would justify the Department making such a recommendation." The district attorney concurred: "I think I share everyone else's concern with the lack of basis for the gang terms. I do think it would be in the best interest of the minor to not associate with anyone in a gang, but there's nothing in the report, either the police reports underlying or the probation report, that makes me think that it's necessary in this case."

Despite this, the juvenile court stated that it would order one of the gang terms, specifically that Edward not associate with anyone known to be a gang member or associated with a gang, because "I have evidence in the report that he was directed by an older person so it is possible [there was gang involvement]."

Edward's counsel objected again. "I understand it is never a good idea for a minor to associate with a gang member, but it does need . . . to be related to either something in the offense or something in the report. And the fact that Edward says an older person

6

told him or helped him with the offense[3] is incredibly vague, and, obviously—I mean, we know of many, many, many instances where that would not be gang-related. [¶] . . . [¶] . . . I understand that the court only has Edward's best interests at heart, and I understand for any person of any race associating with a gang member is not going to be helpful for them, my concern is that having that as an order of—that's been made by the court could label Edward when we really don't have any information and can be something that courts see in the future and could be something—it goes in his file. [¶] I would ask the court that we—the little information that we have, that, please, that . . . the court choose not to impose that."

The judge explained that although he was not going to impose the other recommended gang terms, "I am going to impose that he not associate with anyone he knows to be a gang member or associated with a gang, as I believe it's best for [Edward's] rehabilitation if he limits the people that he associates with to people that aren't involved in a criminal enterprise. [¶] It looks to the court that he was part of a criminal enterprise of some sort because he was directed by another to commit a crime, even though Edward wouldn't talk about it. . . . [I]t should be a term for anyone in this situation."

At the end of the hearing, the judge added, "One last thing. [¶] To address [Edward's counsel's] concerns, I don't want his—his record or anything to say anything about gang terms because they're not. It's just—I just, as a matter of practice, Edward, since you're still here, I just don't want you to associate with anybody you know to be in a gang. I don't want you to be pulled that way."

b. *Analysis*

Edward is well advised to keep his distance from gang members and gang associates. But because the gang condition imposed by the juvenile court prohibits Edward from engaging in otherwise legal conduct, we can uphold it only if there is a

---

[3] The record does not reflect that Edward made any such statement, so Edward's counsel may have misspoken. The probation report states that during an interview, Edward "stated he did not want to discuss the instant offense."

7

reasonable connection between the condition and the offense or between the condition and future criminality. (*Lent*, *supra*, 15 Cal.3d at p. 486.) Without a reasonable factual nexus, there is no reasonable connection and therefore "no reasonable basis for sustaining a condition." (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1085.) Our review of the record shows that a reasonable factual nexus is lacking here. Any connection between Edward's offense and gang activity is speculation. And in the absence of evidence of gang affiliation or association with gang members or risk of gang involvement on Edward's part, the gang condition is not tailored to his future criminality. (*D.G.*, *supra*, 187 Cal.App.4th at p. 53.) In these circumstances, we conclude that the gang condition is improper and therefore we will strike it.

3.     *School Campus Condition*

Edward argues that the school campus condition is unconstitutionally vague, because "it fails to notify [him] and those responsible for enforcement that [he] would only violate this condition if he knows he is on a school campus." He contends that the condition should be modified as follows: "Minor is not to be present at any location that he knows is part of a school campus unless he is enrolled." Although Edward did not raise any objection to this condition at the dispositional hearing, he may properly raise this issue on appeal, because he is challenging the condition as facially vague, "without reference to the particular sentencing record developed in the trial court." (*Sheena K.*, *supra*, 40 Cal.4th at p. 887.) In such circumstances, an issue of law arises that is subject to de novo review on appeal. (*People v. Mendez* (2013) 221 Cal.App.4th 1167, 1172.)

We are not persuaded that the condition here is vague, or that it must be modified. Edward argues that the condition is vague because it "covers not only obvious school facilities like classrooms or a gymnasium but any part of a school campus." The very wording of this argument in Edward's brief shows that the condition is clear: Edward is to avoid "any part of a school campus" unless he is enrolled. Edward asserts that "[m]any" schools "are housed in areas of commercial buildings that [he] might enter unknowingly." Should that occur, he will not have violated his probation. As our Supreme Court has recently confirmed, a violation of a probation condition must be

8

willful.  (*People v. Hall* (2017) 2 Cal.5th 494, 501-502; see also *People v. Moore* (2012) 211 Cal.App.4th 1179, 1186 (*Moore*) ["it is now settled that a probationer cannot be punished for presence, possession, or association without proof of knowledge," citing *People v. Patel* (2011) 196 Cal.App.4th 956, 960].)  Therefore, Edward will not violate the school campus provision if, as he hypothesizes, he should simply happen to be find himself to be present on a school campus without knowing it.

Edward argues that the school campus condition, like the unconstitutionally vague conditions in *Sheena K.* and *Victor L.*, does not adequately inform him in advance of what conduct he must avoid.  We disagree.

In *Sheena K.*, our Supreme Court ordered modification of a probation condition that prohibited probationer from association with " 'anyone disapproved of by probation.' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.)  The problem with the condition in *Sheena K.* was that the category " 'anyone disapproved of by probation' " was vague:  It did not identify which persons were disapproved of.  The problem was cured by specifying that the probationer should not associate with anyone " 'known to be disapproved of' by a probation officer or other person having authority over the minor." (*Id.* at p. 892.)  Here, in contrast, the condition identifies the places that Edward is to avoid, specifically, school campuses unless he is enrolled.

The condition in *Victor L.*, which prohibited the probationer from being in the presence of weapons or ammunition (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 912-913) differs significantly from the condition challenged here.  The condition in *Victor L.* required the probationer to avoid certain people and places, but "failed to clearly specify what conduct was prohibited, that is, what persons or areas the probationer[ was] required to avoid." (*Moore*, *supra*, 211 Cal.App.4th at p. 1188.)  Here, the school campus condition specifies the areas Edward is to avoid:  school campuses, unless he is enrolled.

We conclude that the school campus condition imposed on Edward is not vague, and we decline to modify it.

9

B.      *Maximum Term of Confinement and Credit for Time Served*

Edward argues, and the Attorney General agrees, that the juvenile court erred at the dispositional hearing by failing to specify Edward's maximum term of confinement and by failing to calculate his credits for time spent in custody.

At disposition, the juvenile court removed Edward from his parents' custody. Section 726 provides that when a "minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense . . . which brought . . . the minor under the jurisdiction of the juvenile court." (§ 726, subd. (d)(1).)  Furthermore, in a juvenile delinquency proceeding like the one here, "[A] minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing. (Pen. Code, § 2900.5, subd. (a); *In re Eric J.* (1979) 25 Cal.3d 522, 533-536.)  It is the juvenile court's duty to calculate the number of days earned, and the court may not delegate that duty. (Pen. Code, § 2900.5, subd. (d); *People v. Vargas* (1988) 204 Cal.App.3d 1455, 1469, fn. 9.)"  (*In re Emilio C.* (2004) 116 Cal.App.4th 1058, 1067.)

Although the minute order from Edward's detention hearing states that the maximum time Edward may be confined in secure custody for the offense sustained in the wardship petition is one year, the dispositional order is silent as to the maximum period of confinement.  And although the June 28, 2016 report and recommendation of the probation department states that Edward was detained at the Juvenile Justice Center after his offense for six days, from May 20 to May 25, 2016, the dispositional order is silent as to time spent in custody.  We agree with the parties that it is appropriate to remand the matter to the juvenile court to calculate Edward's maximum term of confinement, taking account of any credits for any time he spent in custody before the dispositional hearing.

At the dispositional hearing, Edward was ordered detained in Juvenile Hall pending his transfer to the ranch.  The judge stated that Edward would "be taken to the

10

ranch in the next day or so."  Citing *In re J.M.* (2009) 170 Cal.App.4th 1253, 1256 (*J.M.*), Edward argues that the custody credits calculation should include any credits Edward might have earned for time spent in detention after the dispositional hearing but before his transfer to the ranch.  Undoubtedly, Edward is entitled to credit against his maximum term of confinement for any time he spent in custody between the dispositional hearing and his placement at the ranch (*ibid.*), but there was no error on the part of the juvenile court in failing to calculate those credits, because any such period in custody had not yet occurred.  The situation here is different from *J.M.*  There, the juvenile court erred in not awarding credits for time in custody after the dispositional hearing and before placement, but that was not an error made at the dispositional hearing or in the dispositional order.  Rather, it was an error made at a " 'two week placement review,' " held after the dispositional hearing and before J.M.'s transport to a group home.  (*Id.* at p. 1255.)  We decline to instruct the juvenile court here to amend its dispositional order to include custody credits that had not yet accrued at the time the order was issued.  Accordingly, we will instruct the juvenile court to amend its June 28, 2016 dispositional order to reflect credit for time Edward spent in custody through that date.

### DISPOSITION

We strike the condition in the juvenile court's June 28, 2016 dispositional order (Order) that Edward not associate with anyone he knows to be a gang member or associated with a gang.  This matter is remanded to the juvenile court with instructions to amend the Order to reflect Edward's maximum term of confinement and credits for time served.  In all other respects, the Order is affirmed.

_____
Miller, J.

We concur:

_____
Kline, P.J.

_____
Stewart, J.

Filed 4/19/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re EDWARD B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>EDWARD B.,<br><br>      Defendant and Appellant. | A148887<br><br>(Contra Costa County<br>Super. Ct. No. J15-00555) |

BY THE COURT:

       The opinion in the above-entitled matter filed on March 21, 2017, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____         _____
                                                       Kline, P.J.

1

Trial Court:  Superior Court of Contra Costa County

Trial Judge:  Hon. John Laettner


Attorney for Appellant           Clifford Stanley


Attorneys for Respondents        Kathleen A. Kenealy
Acting Attorney General
Gerald A. Engler
Chief Assistant Attorney General
Jeffrey M. Laurence
Senior Assistant Attorney General
Donna M. Provenzano
Supervising Deputy Attorney General
Violet M. Lee
Deputy Attorney General