Filed 1/4/21  In re Marcos G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re MARCOS G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F080897 |
| Plaintiff and Respondent, | (Super. Ct. No. JJD070940) |
| v. | |
| MARCOS G., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  John P. Bianco, Judge.

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ross K. Naughton, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Poochigian, Acting P.J., Franson, J. and Peña, J.

Minor Marcos G. appeals from a disposition order adjudging him a ward of the juvenile court. (Welf. & Inst. Code, § 602.) He contends gang-related conditions of his probation, including a condition prohibiting him from associating with known gang members and gang associates, is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), superseded by statute on another ground as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, footnote 6. We affirm.

## **BACKGROUND**

On September 27, 2017, the Tulare County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a) alleging minor committed two misdemeanor counts of resisting arrest (Pen. Code,[1] § 148, subd. (a)(1)), and one felony count of vandalism (§ 594, subd. (a)). The petition was later amended to allege an additional count of misdemeanor vandalism.

On January 25, 2018, the Kern County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a) alleging minor committed one misdemeanor count of escape or attempted escape from the Kern County Juvenile Hall (Welf. & Inst. Code, § 871), one misdemeanor count of resisting arrest (§ 148, subd. (a)(1)), and one misdemeanor count of battery on a peace officer engaged in the performance of his duties (§ 243, subd. (b)).

On February 26, 2018, a notice of violation of probation was filed (Welf. & Inst. Code, § 777, subd. (a)).

On May 15, 2018, the Tulare County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a) alleging minor committed one misdemeanor count of public intoxication (§ 647, subd. (f)).

---

[1] Undesignated statutory references are to the Penal Code, unless otherwise indicated.

2.

Subsequently, at least three notices of probation violation were filed. (Welf. & Inst. Code, § 777, subd. (a)).

On January 3, 2020, the Tulare County District Attorney filed the juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a) at issue in the instant case, alleging minor committed one felony count of being a minor illegally in possession of a concealed weapon (§ 29610), and one misdemeanor count of being a minor illegally in possession of live ammunition (§ 29650). The allegations arose out of a January 2, 2020 incident in which minor fled on foot from officers of the Porterville Police Department who were seeking minor in relation to an active warrant. An officer gave chase and ordered minor to stop. Minor stopped running and laid face down on the ground. The officers searched minor and found a loaded .22 caliber revolver and two additional live rounds.[2]

On January 6, 2020, minor admitted the two offenses alleged in the January 3, 2020 petition.

On February 25, 2020, the matter came on for disposition. The court denied deferred entry of judgment and declared minor a ward of the court and placed him on probation in out-of-home confinement. The court ordered minor be placed in the Tulare County midterm program for 365 days. The court set the maximum term of confinement on the instant petition at three years, four months, and the maximum term on all petitions before the court at five years. The court awarded minor 575 days of pre-disposition time credit.

As a condition of probation, the court additionally required minor to:

> "[c]omply with these terms regarding gangs. For purpose of this term, the word gang means a criminal street gang as defined in Section 186.22[ subdivision](e) and Section 186.22 [subdivision] (f) of the Penal Code.

---

[2] The underlying facts regarding the incident are taken from the probation officer's report.

3.

"a. . . . Not be a member of, or associate with, any person the child knows, or should reasonably know, to be a member or to be involved in the activities of a criminal street gang.

"b. . . . Not wear or display items or emblems reasonably known by the minor to be associated with or symbolic of gang membership.

"c. . . . Not acquire any new tattoos or piercings known to the minor to be gang related and have any existing tattoos are piercings photographed as directed by the probation officer."[3]

On March 4, 2020, minor filed a timely notice of appeal.

## DISCUSSION

Minor contends the gang-related conditions of his probation are unreasonable under *Lent*, *supra*, 15 Cal.3d 481.[4] We conclude the argument is without merit because the record reflects the conditions are reasonably related to future criminality and therefore valid under *Lent*.

We review the reasonableness of the court's imposition of a probation condition for an abuse of discretion, taking into account the court's stated purpose in imposing it. (*In re P.O.*, *supra*, 246 Cal.App.4th at p. 294.)

---

[3]  In some instances, minor's briefing states he is challenging only the gang association condition set out in paragraph a. In other instances, it appears he is challenging all three of the listed gang conditions. Our analysis applies equally to all three of the conditions.

[4]  Minor acknowledges he did not object to the gang conditions below. The failure to object to a probation condition on *Lent* grounds in the trial court generally forfeits the claim on appeal. (*People v. Welch* (1993) 5 Cal.4th 228, 237; *In re Sheena K.* (2007) 40 Cal.4th 875, 881-882, 883, fn. 4; *In re P.O.* (2016) 246 Cal.App.4th 288, 294; *In re Vincent G.* (2008) 162 Cal.App.4th 238, 246.) This forfeiture rule also applies to constitutional challenges to probation conditions if the constitutional question cannot be resolved without reference to the particular sentencing record developed in the trial court. (*Sheena K.*, at p. 889.) Accordingly, the claim is forfeited. Nonetheless, because minor also raises an ineffective assistance of counsel claim based on counsel's failure to object, we shall consider his *Lent* claim on the merits. (See *People v. Moran*, *supra*, 1 Cal.5th at p. 403, fn. 5.)

When a minor is made a ward of the juvenile court and placed on probation, the court "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code, § 730, subd. (b).) " 'In fashioning the conditions of probation, the juvenile court should consider the minor's entire social history in addition to the circumstances of the crime. [Citation.] Thus, "[a] condition of probation which is [legally] impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court." ' " (*In re R.V.* (2009) 171 Cal.App.4th 239, 246.) The court has "broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile." (*In re Josh W.* (1997) 55 Cal.App.4th 1, 5.)

Although a juvenile court's discretion to impose probation conditions is broad, it is not unlimited. (*In re D.G.* (2010) 187 Cal.App.4th 47, 52.) In *Lent*, our Supreme Court held that "a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Lent*, *supra*, 15 Cal.3d at p. 486.) The high court determined that "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Ibid.*) "This test is conjunctive – all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

Thus, "even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality."

5.

(*People v. Olguin*, *supra*, 45 Cal.4th at p. 380.)  The connection between the challenged condition and future criminality must be more than abstract or hypothetical.  (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1121 (*Ricardo P.*).)  Instead, there must be a strong connection between "the burdens imposed by the challenged condition and a probationer's criminal conduct or personal history."  (*Id.* at p. 1120.)  Where there is nothing in the record to indicate a probationer has any gang affiliations or other gang-related history, and the underlying offense has nothing to do with a gang, a "no-gang-contact" probation condition is not reasonably related to a probationer's future criminality.  (*People v. Brandão* (2012) 210 Cal.App.4th 568, 570, 574; accord, *In re Edward B.* (2017) 10 Cal.App.5th 1228, 1234-1236 (*Edward B.*); cf. *Ricardo P.*, *supra*, 7 Cal.5th at p. 1121.)

Here, the record contains the following evidence of minor's gang affiliations and gang-related conduct:

In a February 7, 2018 report of the probation officer concerning minor's suitability for deferred entry of judgment, the probation officer noted that minor and his grandmother (with whom minor resided) denied minor being a gang member.  However, minor's grandmother reported that minor's Facebook friends wore red bandanas covering their faces.[5]  On February 9, 2018, the court entered a disposition order that included gang-related probation terms identical to those imposed here.

On April 12, 2018, the probation officer prepared a report in relation to minor's violation of probation.  Minor denied associating with any known gang members.  However, when minor's grandmother was asked if he was involved with gangs, she responded, " 'with northerners.' "  On April 16, 2018, the juvenile court entered a

---

[5]     The record does not reveal the significance of red bandanas or the color red.  The Attorney General relies on caselaw for the proposition that the color red is associated with Norteño gangs.  We need not, and therefore do not, rely on instances in which minor or his associates are wearing the color red in reaching our conclusion.

dispositional order that once again included the same gang terms at issue in the instant appeal.

On July 11, 2018, the probation department conducted a detention/intake assessment, and reported that, since the minor's commitment approximately one month prior, he had accumulated three "consequences" and three formal incident reports, which included "being removed from school, assault on a minor, failing to follow instructions, *gang behavior and activity*, disruptive behavior, along with racial and derogatory slurs." (Italics added, boldface omitted.)  Minor's grandmother expressed concern regarding the fight minor had engaged in because minor's best friend, who was also detained in the same program, was " 'jumped in' (into a gang), when they were on the 'outs.' " (Boldface omitted.)  The probation officer reported that minor's grandmother "knows the youth is a follower and he was probably 'jumped in' when that incident happened." (Boldface omitted.)

The probation officer also submitted to the court a  "CHRONO" (boldface omitted), authored on July 10, 2018, which noted that minor had been involved in physical altercations on June 29, 2018, and July 1, 2018, in which minor and/or his co-participants "yelled out gang slurs":

> "On June 29, 2018, the minor received an incident report after he was involved in a physical altercation.  According to report number, YF-9076, the minor and another youth simultaneously went from their assigned bunk area to where two youth were located and began assaulting them with closed fist[s] in the torso and head area.  During the altercation, the minor's [*sic*] involved were yelling gang slurs at each other. . . .  The youth was asked why he jeopardized his program when he was almost finished with it. He stated he didn't know and would have made the same choice again. . . .
>
> "On July 1, 2018, the minor received an incident report after being involved in a physical altercation with another youth.  According to report number, YF-9079, the minor and another youth engaged in a physical altercation. After officers secured both the youth, the minor yelled out, 'fucking scrap.' It should be noted, the term, 'scrap' is a derogatory name for southern gang members. . . ."

At a July 16, 2018 detention hearing, minor admitted he violated the rules and regulations of his short-term program through "gang behavior and activity."

In a July 25, 2018 supplemental report, the probation officer noted that minor stated that he "associates with Northerners." Minor's grandmother also confirmed that he associates with "northern gang members." On July 27, 2018, the court entered a disposition order that once again included the identical gang terms.

In an April 10, 2019 supplemental report, the probation officer reported that minor denied being a gang member or associating with gang members. When asked why he was previously listed as being an associate of the "northern gang," minor stated, " 'I don't know.' " Minor's grandmother reported that she had not recently witnessed minor participating in gang-related behavior. On April 12, 2019, the court entered a disposition order that did not include gang terms as a condition of probation.

On January 3, 2020, the petition at issue here was filed. In a detention/intake assessment prepared the same day, the probation officer noted that minor's grandmother reported that he associates with gang members. In a subsequent supplemental report, the probation officer noted the underlying offense involved minor carrying a loaded handgun in his pants and fleeing the police while "wearing a red [T]-shirt." Minor denied being a gang member or associating with gang members. However, the probation officer noted that Juvenile Detention Facility records indicated that, on January 14, 2019, while in the Juvenile Detention Facility, minor and another minor "were observed flashing the number four to each other, which is the number associated with northern gangs."

At the February 25, 2020 disposition hearing, the People argued against minor being released to his mother's custody, in part because probation had reported he was still associating with northern gangs. The court determined that minor required more structure than he would receive at home and therefore adopted the recommendation of probation to place minor in the midterm program. The juvenile court then entered its disposition order, which included the contested gang terms.

Based on the foregoing, the gang conditions imposed on minor as a condition of his probation are reasonably related to preventing future criminality. The record developed by the probation department reflects that minor began associating with gang members at least as early as April 2018. Soon thereafter, he engaged in two fights that involved minor yelling gang slurs. His grandmother believed one of those incidents involved minor being " 'jumped in' " to the gang. (Boldface omitted.) Minor's best friend also was " 'jumped in' " to the gang. (Boldface omitted.) Minor also admitted to engaging in "gang behavior and activity." In January 2019, he was seen flashing gang signs. At the time of the incident at issue here, minor's grandmother reported that minor continued to associate with northern gang members. Based on the foregoing, the court did not abuse its discretion in concluding that the gang conditions were reasonably related to preventing minor's future criminality. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 623, 626 [prohibition against contact with known gang members was reasonably related to future criminality, where the defendant was an admitted Norteño gang member, but there was no evidence his offense was the product of gang activity].)

Minor argues that none of his offenses "had anything to [do] with gangs or gang association." However, our Supreme Court has rejected the argument that *Lent*'s third prong requires " 'a nexus between the probation condition and the defendant's underlying offense or prior offenses." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.) To the contrary, "conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime" (*People v. Moran*, *supra*, 1 Cal.5th at pp. 404-405), and "courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense" (*Ricardo P.*, *supra*, at p. 1122).

Minor also argues this case is analogous to *Edward B.*, in which the appellate court concluded a gang condition was unreasonable because there was nothing in the record to suggest the minor was a gang member or that his friends were associated with

9.

gangs.  (*Edward B.*, *supra*, 10 Cal.App.5th at pp. 1234-1236.)  *Edward B.* is clearly distinguishable given the extensive details regarding minor's involvement with gangs set forth above.

In sum, the burden imposed by the gang conditions is justified based on minor's ongoing gang associations.  The conditions are reasonably related to curbing minor's future criminality, and are reasonably proportionate in light of that purpose.  The condition is therefore valid under *Lent*, and the court did not abuse its discretion in imposing it.  (Cf. *Ricardo P.*, *supra*, 7 Cal.5th at p. 1124 [holding electronic search condition of probation invalid because it imposed a disproportionate burden on the juvenile's privacy with only a limited justification].)

## **DISPOSITION**

The juvenile court's disposition order is affirmed.