Filed 2/10/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re CESAR G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. CESAR G., Defendant and Appellant. | A161171 (Contra Costa County Super. Ct. No. J20-00130) |

After Cesar G. pleaded no contest to allegations of alcohol-related reckless driving, he was adjudged a ward of the court and placed on probation subject to a number of conditions, including that he submit to warrantless searches for alcohol and controlled substances and attend DUI programs. On appeal, Cesar challenges the warrantless search condition. He also challenges the juvenile court's separate order that he must pay the cost for attending the DUI-related programs. We conclude that it was error to make Cesar liable for these costs, but will otherwise affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

We draw our summary of the facts from the probation department's report. Shortly after 1:00 a.m. on a January morning, California Highway Patrol officers responded to a report of a traffic collision. The officers found Cesar, who was then 17 years old and who did not have a driver's license,

1

standing by a car which was badly damaged and blocking traffic. He told the officers he had drunk five beers at a friend's house and was driving at about 80 miles per hour when the collision occurred.[1] Cesar's friend, also age 17, was a passenger in the vehicle. Cesar said he was not sure what had happened: the steering wheel turned by itself and the vehicle hit a wall, and he tried to use the brakes, but they did not work. The officers observed that Cesar's eyes were red and watery, his speech was slurred, and he smelled of alcohol, and when he failed to satisfactorily perform field sobriety tests, he was placed under arrest. A breath test taken at about 2:00 a.m. revealed that his blood alcohol content was 0.128 percent. Cesar later admitted that he had taken his mother's car without permission and had declined his parents' calls during the night of the collision.

The Contra Costa County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code[2] section 602, alleging Cesar committed three misdemeanors: driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)); driving with a 0.08 or higher blood alcohol content (*id.*, § 23152, subd. (b)); and driving without a license (*id.*, § 12500, subd. (a)).

As part of a negotiated disposition, Cesar admitted an amended count four—reckless driving involving alcohol (Veh. Code, §§ 23103/23103.5)—and the remaining counts were dismissed.

At the dispositional hearing, Cesar was adjudged a ward of the court with no termination date and placed on probation in his parents' home, subject to various terms. He timely appealed.

---

[1] Cesar later told a probation officer that it was 12 beers, not five, and he had been drinking at a park.

[2] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

**DISCUSSION**

A.    *Search Condition*

Cesar argues that the condition of probation requiring him to submit to warrantless searches for alcohol or controlled substances is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*), as well as unconstitutionally overbroad.  We conclude that the condition meets the requirements of *Lent* and *Ricardo P.*, and decline to reach the constitutional issue because it has been forfeited.

1.    *Additional Background*

The probation department recommended that Cesar be subject to a search condition that would require him to submit his person, property, any vehicle under his control, and his residence, to search and seizure by any peace officer at any time with or without a warrant.  Cesar's counsel objected to the condition, saying, "I don't think that a four-way search clause is necessary or is really legal.  I'd be objecting under *In re Ricardo P.* and *Lent*.  I'm not sure why we would need to be able to search Cesar's home given this first-time misdemeanor."

The probation officer responded that the recommended condition was appropriate and stated, "The minor was drinking and driving, and one of the requirements is for us is to make sure that he is not using any kind of substances.  So we would need to search his property, whether it's in his home, his vehicle, his possessions, to make sure he doesn't have any of those things."

The prosecutor deferred to the juvenile court.

The court imposed a search condition, but limited it to searches for alcohol and controlled substances.

3

2.	*Applicable Law and Standard of Review*

We summarized some of the applicable law in *In re Edward B.* (2017) 10 Cal.App.5th 1228 (*Edward B.*):

"The juvenile court is authorized to 'impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' (§ 730, subd. (b).) We review the juvenile court's probation conditions for abuse of discretion. (*In re P.A.* (2012) 211 Cal.App.4th 23, 33.) [¶] Well-established principles guide our review. ' "The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents" [citation], thereby occupying a "unique role . . . in caring for the minor's well being." [Citation.] . . . [¶] The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults.' " (*Edward B., supra,* 10 Cal.App.5th at p. 1232.)

"The juvenile court's discretion in imposing conditions of probation is broad but not unlimited. (*In re D.G.* (2010) 187 Cal.App.4th 47, 52 (*D.G.*).) Our Supreme Court has stated criteria for assessing the validity of a probation condition: Upon review, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality[.]" ' (*Lent, supra,* 15 Cal.3d at p. 486.) 'Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.' (*Ibid.*) Adult and juvenile probation conditions are reviewed under the *Lent* criteria. (*D.G., supra,* 187 Cal.App.4th at p. 52.) . . . In determining reasonableness, courts look to the

4

juvenile's offenses and social history. ([*Id.* at p. 53.].)" (*Edward B.*, *supra*, 10 Cal.App.5th at p. 1233.)

In *Ricardo P.*, our Supreme Court clarified that the requirement that a probation condition be reasonably related to future criminality "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.) A condition directed at curbing future criminality need not be " 'strictly tied to the offender's precise crime' "; for example, a condition may be based on "information in a probation report that raises concerns about future criminality unrelated to a prior offense." (*Ibid.*)

The reasonableness standard is not the only limit on the juvenile court's discretion. A probation condition will be invalidated as unconstitutionally overbroad if any limitations it imposes on a person's constitutional right are not closely tailored to the purpose of the condition. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) When a probation condition is challenged as facially overbroad, without reference to the particular sentencing record developed in the trial court, an issue of law arises that is subject to de novo review on appeal. (*Id.* at pp. 888-889.)

3. *Analysis*

We begin with the *Lent* analysis, focusing on its third element: Cesar argues that the search condition is not reasonably related to his future criminality because concern that he will use alcohol or drugs is adequately addressed by the condition requiring him to submit to alcohol and drug testing. The search condition, Cesar argues, imposes a heavy burden on his privacy with little justification, because the record does not suggest that he will engage in future criminal conduct by concealing alcohol or drugs. We disagree.

5

After he started drinking alcohol at age 16, Cesar would drink about eight or nine beers at a time, twice a month; the most he drank at one time was 15 beers. Cesar and his friends drank alcohol together at parties, and one of his friends had received a DUI before the crash in this case. Although Cesar told Highway Patrol officers on the night of his crash that he had drunk five beers, he later told his probation officer that it was actually 12.

Showing his unwillingness or his incapacity to come to grips with the dangers of his actions, Cesar continued to drink and purchase alcohol after the crash and his arrest. He told the probation department that two weeks after the crash, he attended a party and drank alcohol.

He rejected his parents' efforts to impose limits on his conduct. After the crash, Cesar's mother learned that he was buying alcohol by tracking his location on his cell phone; when she confronted Cesar and said she would report him to the liquor store, he told her he would simply find another liquor store that would sell to him. Nor could Cesar's mother control his use of the family cars. On at least two occasions before the January collision, Cesar had taken his parents' cars without permission after they had gone to sleep; his mother said she had begun hiding keys to the cars before she went to sleep. Several months *after* the January collision, Cesar again drove without a valid license and crashed into a light pole when he fell asleep while driving.[3]

On this record, we conclude the trial court did not abuse its discretion by imposing the search condition. Cesar drove recklessly at a high rate of speed with a passenger in the car, and with a blood alcohol level well above what is permitted by law for persons who are old enough to drink. He

---

[3] Parental limits seemed to have little effect on Cesar. When Cesar's mother took away his gaming system after the January crash, he purchased another one.

continued to drink even after the crash and his arrest for a DUI. He used his parents' car without their permission and took it covertly. He rejected his mother's efforts to keep him from buying alcohol. Under these circumstances, the burdens imposed on Cesar by this search term are not unreasonable or disproportionate in light of the legitimate interest in Cesar's rehabilitation and keeping him from criminal behavior in the future. It allows Cesar to be more closely supervised, which he apparently needs. In sum, the search condition is reasonably related to Cesar's future criminality (*Lent, supra,* 15 Cal.3d at p. 486). Therefore, we need not discuss the remaining elements of the *Lent* analysis.

We turn now to Cesar's constitutional overbreadth challenge to the search condition, and conclude that the challenge has been forfeited by his failure to raise it below. A constitutional challenge to a probation condition as overbroad can be raised for the first time on appeal if it presents " ' "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." ' " (*Sheena K., supra,* 40 Cal.4th at p. 889.) Here, Cesar's constitutional argument is essentially a restatement of his reasonableness argument, which relies on the sentencing record. This reliance belies Cesar's contention that he is raising a facial challenge to the search condition, and forecloses Cesar from making an overbreadth challenge for the first time on appeal. (*Ibid.*; see also *People v. Patton* (2019) 41 Cal.App.5th 934, 946 [facial challenge is claim that "condition cannot have *any* valid application, without relying on any facts in the sentencing record"].)

B.    *Fees for Attending DUI Programs*

Cesar argues that the juvenile court lacked authority to order him to pay for the DUI programs that he is required to attend as a condition of

probation. He argues that although section 730, subdivision (b) authorizes a juvenile court to impose "any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced," he cannot be required to pay for the DUI classes in light of other provisions of the Welfare and Institutions Code and case law holding that neither a minor nor the minor's family can be charged costs relating to the rehabilitation of a section 602 ward. (*In re M.W.* (2021) 67 Cal.App.5th 586, 590 (*M.W.*) [ward and family not liable for cost of domestic violence treatment program required as a condition of probation]; *In re David C.* (2020) 47 Cal.App.5th 657, 671 (*David C.*) [ward and parents not liable for cost of psychological assessment required as condition of probation].)

Cesar's argument raises an issue of law, which we review de novo. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95.)

1.  *Additional Background*

The probation department reported on an interview in which Cesar's mother expressed concern that Cesar had a serious drinking problem and worry that he had chosen to drink and drive. Cesar's mother described the consequences she had imposed on him as a result of the incident: he was not allowed to drive or work on getting his driver's license, his phone was taken away, and he had to pay for the vehicle towing fees and repairs that resulted from the crash. She also said that Cesar would pay for any substance abuse classes he was required to take. The probation department reported that Cesar was working with his father providing landscaping services, about three times a week.

The probation department recommended that Cesar be required to participate in adolescent DUI programs, including Alive at 25 and C.O.P.E.

Separately, the department recommended that he pay a fine of $390 under Vehicle Code section 23536, subdivision (a).

Cesar's counsel objected to the fine, expressing her belief that the family lacked the present ability to pay it. His counsel had no objection to the DUI programs in principle, but noted that Alive at 25 cost a little more than $100 and that there was a fee for the C.O.P.E. program. She asked the court to require the probation department to pay for the classes or strike the requirement that Cesar attend the classes. Her argument relied on *David C., supra,* 47 Cal.App.5th at pages 670-671, in which our colleagues in Division Three held that an order requiring a ward and his parents to pay for psychological assessments required as a condition of probation was not authorized by statute.[4]

The prosecutor and the probation officer deferred to the court on the issue of the fine. With respect to the DUI programs, the prosecutor said, "I would ask Probation whether Alive at 25 and COPE have a sliding scale based off of income or other eligibility requirements. It is more important to me that the minor completes the classes than who pays for it. So . . . I will defer to the Court on whether the Court orders the minor to pay for it or Probation." The probation officer was unaware as to whether there were sliding scales for Alive at 25 and C.O.P.E.; expressed the view that Minor should complete the classes, given the seriousness of the offense; and stated that the probation department could, but preferred not to, pay for the classes.

The court waived the fine, ordered the DUI programs, and declined to order the probation department to pay for the programs based on its finding that Cesar had the ability to pay for them. The court explained that Alive at

_____

[4] Cesar's counsel made no objection to a third, free DUI program that had been recommended.

25 and C.O.P.E. "are very valid—valuable and essential programs." The court commended Cesar's mother for taking actions to ensure that Cesar understood the seriousness of what had happened and the dangers of driving under the influence and drinking generally at his age. The court noted that Cesar's mother was requiring him to pay expenses arising from his conduct and that Cesar was working for his father. The court then ordered Cesar to attend the Alive at 25 and C.O.P.E. programs and concluded that Cesar, and not the probation department, would be ordered to pay the fees for the programs. The court explained: "I do think that Cesar does have the ability to pay those fees based on the work he's doing for his father and his mother's decisions already that he is responsible for the financial expenses. And that's one of the reasons I am waiving the fine so that he can pay for the fees."

2.     *Analysis*

It is well established that in interpreting a statute, we seek to " 'ascertain the Legislature's intent [and] effectuate the law's purpose.' " (*In re Greg F.* (2012) 55 Cal.4th 393, 406.) We consider " ' "the particular clause or section in the context of the statutory framework as a whole." ' " (*Ibid.*) And we also "consider the statute in light of precedent construing it." (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1150.)

We have already observed that the jurisdiction of the juvenile court in setting probation conditions is not unlimited, despite the broad language of section 730, subdivision (b). (*D.G.*, *supra*, 187 Cal.App.4th at p. 52.) Although Cesar cites no statutory provision that specifically prohibits the juvenile court from imposing the costs of DUI programs on a section 602 ward, the Attorney General does not identify any provision that would permit it. The Welfare and Institutions Code provides explicit authority for certain financial liability that may be imposed upon a ward, but does not include

10

costs of DUI programs.  (See § 730, subds. (a)(1)(A) [ward may be ordered to make restitution or pay a fine], (b) [ward may be ordered to "go to work and earn money for the support of the ward's dependents or to effect reparation and . . . keep an account of . . . earnings . . . and apply these earnings as directed by the court"], (d) [ward may be ordered to pay for sex offender treatment programs]; see also §§ 730.5 [ward may be ordered to pay a fine up to amount that could be imposed on an adult for the same offense] & 730.6 [ward may be ordered to make restitution and pay restitution fine].)

The Welfare and Institutions Code also limits the costs that can be imposed on a minor's parents "or other person liable for the support of a minor." (§ 903, subd. (a).)  Parents may be liable for the "reasonable costs of support" of a minor who is detained (*ibid.*), but they are not liable for "any costs of treatment or supervision for the protection of society and the minor and the rehabilitation of the minor." (*Id.*, subd. (b).)  At one time, section 903.2 authorized the juvenile court to require a ward's parent to cover the costs of " 'probation supervision,' " but the section had been amended effective January 1, 2018.  (*David C.*, *supra*, 47 Cal.App.5th at p. 670.)  The amendments "largely eliminated statutory authority for charging wards and their families" the costs of probation.  (*M.W.*, *supra*, 67 Cal.App.5th at p. 589.)

Based on these limitations, courts have invalidated requirements that probationers or their families pay for the costs of treatment required as a condition of probation.  (*M.W.*, *supra*, 67 Cal.App.5th at p. 590; *David C., supra*, 47 Cal.App.5th at p. 671.)  *M.W.*, a case decided after the juvenile court issued the order in this appeal, also arose from the juvenile court declining to order the probation department to pay for a treatment program that was a condition of a minor's probation.  (*M.W., supra,* 67 Cal.App.5th at p. 588.)

11

The Attorney General attempts to distinguish *David C.* on the basis that the disposition order in *David C.* stated that the minor and his parents were financially liable for the cost of required psychological assessment (*David C.*, *supra*, 47 Cal.App.5th at p. 670), while the written disposition order in this case is silent as to liability for the programs, despite what the juvenile court announced at the disposition hearing. We do not find this persuasive. The effect of the juvenile court's orders, as pronounced at the disposition hearing, is that Cesar must attend the DUI programs, and must pay for them. (See *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346 [where oral pronouncement of probation conditions differs from clerk's transcript "the part of the record that will prevail is the one that should be given greater credence in the circumstances of the case"].) Notably, the Attorney General makes no attempt to distinguish *M.W.*, the facts of which are similar to the facts here.

Nothing prevents Cesar's parents from requiring him to reimburse them for the costs they incurred as a result of his conduct, as they have done here. The juvenile court can support the parents' efforts to enhance Cesar's rehabilitation. But because the court cannot order Cesar to pay for his attendance at the DUI-related programs, the court erred in declining to order the probation department to pay the fees for the DUI programs Cesar was required to attend.

## DISPOSITION

The matter is remanded, and the juvenile court is directed to enter an order clarifying that Cesar is not liable for paying the program costs of Alive at 25 and C.O.P.E., and that any costs he incurs or has incurred for the program costs are to be reimbursed by the appropriate agency. The challenged orders are otherwise affirmed.

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.




A161171, *People v. Cesar G.*

13

Trial Court: Superior Court of Contra Costa County


Trial Judge: Hon. John W. Kennedy

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and Appellant


Rob Bonta, Attorney General; Lance E. Winters, Chief Assistant Attorney General; Julie L. Garland, Assistant Attorney General; A. Natasha Cortina and Robin Urbansky, Deputy Attorneys General, for Plaintiff and Respondent

A161171, *People v. Cesar G.*