Filed 6/4/25  In re Preston G. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| In re PRESTON G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PRESTON G.,<br><br>        Defendant and Appellant. | A167602<br><br><br>(Contra Costa County Super. Ct. No. J2200521) |

Defendant Preston G. challenges the juvenile court's imposition of certain gang-related probation conditions after finding him guilty of reckless driving while evading a peace officer.  Defendant argues there was no evidence supporting the court's decision.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2022, a juvenile wardship petition was filed pursuant to Welfare and Institutions Code section 602, subdivision (a), alleging defendant, 17 years old, committed felony reckless driving while evading a peace officer (Veh. Code, § 2800.2, subd. (a)) (hereinafter, petition).

A contested jurisdictional hearing began in January 2023.  Testimony presented at the hearing established the following facts.  On October 14, 2022, a police detective in the City of Concord was surveilling a black Lexus,

1

on which he previously placed a tracker. The detective saw defendant get into the driver's seat while two other individuals got into the passenger seats of the Lexus in the parking lot of a local shopping mall. As the Lexus exited the parking lot, the detective contacted another officer to conduct a traffic stop.

Concord Police Officer Javier Montes was driving an unmarked car equipped with red and blue forward-facing lights when he observed the black Lexus, with dark tinted windows, leaving the mall parking lot without using a turn signal. Officer Montes drove immediately behind the Lexus and activated his lights. Although defendant initially signaled that he would be turning right, he suddenly swerved into the left lane and sped off. Officer Montes followed defendant for about a minute at approximately 55 miles per hour before stopping due to safety concerns. Defendant ran a red light in the heavily congested area as he sped away. Defendant was arrested a few days later, on October 18, 2022.

On February 24, 2023, a contested jurisdictional hearing was held, after which the court found true and sustained the allegation in the petition. The court then denied defendant's request to terminate home supervision while acknowledging he performed well on supervision and received positive reports from probation, his family, and his school.

On March 10, 2023, a contested dispositional hearing began. The court terminated defendant's home supervision. The prosecution then filed a motion requesting imposition of six gang-related probation conditions. In support of its motion, the prosecution offered testimony from a detective in the Concord Police Department's gang unit, as well as four exhibits consisting of 10 photographs depicting defendant and other youths at what appeared to be a graduation gathering.

On March 14, 2023, following the dispositional hearing, the court adjudged defendant a ward of the court and placed him on probation subject to various conditions, including the requested gang-related conditions. Defendant timely appealed.

## DISCUSSION

Defendant contends the juvenile court order imposing gang-related probation conditions must be reversed under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) because there is no evidence his crime was associated with gang activity, the conditions prohibit conduct that is not itself criminal, and the conditions are not reasonably related to his future criminality. The governing law is not in dispute.

The juvenile court may "impose and require any and all reasonable conditions [of probation] that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code, § 730, subd. (b).) We review a juvenile court's imposition of probation conditions for abuse of discretion, reversing only if " 'the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118.)

Under *Lent, supra*, a probation condition exceeds the bounds of reason if the condition (1) has no relationship to the defendant's crime, (2) relates to conduct that is not itself criminal, and (3) requires or forbids conduct that is not reasonably related to the defendant's future criminality. (15 Cal.3d at p. 486.) This *Lent* test is conjunctive, meaning "all three prongs must be satisfied before a reviewing court will invalidate [the condition]." (*People v. Olguin* (2008) 45 Cal.4th 375, 379; accord, *In re J.B.* (2015) 242 Cal.App.4th 749, 754 [*Lent* applies to juvenile probation conditions].)

3

"A condition that would be improper for an adult is permissible for a juvenile only if it is tailored specifically to meet the needs of the juvenile. [Citation.] In determining reasonableness, courts look to the juvenile's offenses and social history." (*In re Edward B.* (2017) 10 Cal.App.5th 1228, 1233.)

Here, the People argue defendant's challenge to the gang-related probation conditions fails under *Lent*'s third prong because they are reasonably related to his future criminality. As such, the People reason, we need not consider whether the conditions also fail under *Lent*'s first and second prongs. We agree.

At the prosecution's request, the court imposed six gang-related probation conditions. These conditions prohibited defendant from: (1) knowingly associating with anyone known to defendant to be a gang member or associated with a gang; (2) knowingly participating in any gang activity or visiting or remaining in any specific location known by defendant to be an area of gang-related activity; (3) knowingly possessing, displaying, or wearing any insignia, tattoos, articles of clothing, caps, hats, jackets, shoes, belts, flags, scarves, bandannas, shirts, logos, emblems, badges, buttons, music, photographs, pictures, art, drawings, images, lyrics, symbols, colors, numbers, monikers, patterns or brands, or displaying any gang signs or gestures that defendant knows to be gang-related; (4) posting, using, displaying, or transmitting on social media any symbols, graffiti, pictures, photos, drawings, lyrics, images, hand signs or gestures, or other items or information known to be gang-related, unless used for educational or court-ordered purposes; (5) associating with six named individuals; or (6) visiting a 325-yard stretch of Pine Street in Concord.

4

The factual basis for these gang-related prohibitions included testimony from Detective Espino, an expert in the field of the Norteños and "50" street gangs. Detective Espino explained that the 50 gang was affiliated with the Norteños and its members were under investigation for their involvement in a recent homicide in Concord, as well as other crimes. Detective Espino also testified regarding 10 photographs, taken a few months before defendant's crime in July or August 2022, which the detective obtained in connection with his investigation of that homicide. The photographs depicted defendant with other young males known to be members or associates of the 50 gang. In at least one photograph, defendant has an "N" painted on his cheek and his hand is making a gang-related gesture.[1]

Based on these photographs, as well as his investigations of this case and the homicide case, Detective Espino opined that defendant "associates" with 50 gang members. In addition, Detective Espino opined that "if these [gang-related probation] terms are imposed, it will help [defendant] towards the straight path of not being involved in gangs, successfully finishing probation and try [sic] to lure him away from any criminal conduct or that gang lifestyle." To that end, Detective Espino explained the proposed terms would prohibit defendant from engaging with six individuals that were suspected members or affiliates of the 50 gang. The terms would also prohibit defendant from visiting an area on Pine Street near Clayton Road in Concord that is "known [for] gang activity . . . ."

---

[1] According to Detective Espino, the Norteño gang commonly uses the numbers 4 and 14, the letter N, four dots, and the color red as symbols for its organization. The 50 gang commonly uses the number 5. The Norteño gang's activities include possession of weapons; committing shootings, assaults, and other crimes; and marking locations with gang-related graffiti. The 50 gang's primary activity is "shootings."

The juvenile court found, based on this testimony and evidence, that "at the very minimum, . . . Preston associates and supports and expresses allegiance to—at least as recent as last summer, to the Norteno and 50 street gangs." As such, the court found it appropriate to impose gang prohibitions as part of the conditions of defendant's probation, to prevent his future criminality and promote his rehabilitation. This ruling was lawful.

Penal Code section 186.22, subdivision (a) makes it a crime to "actively participate[] in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and [to] willfully promote[], further[], or assist[] in felonious criminal conduct by members of that gang . . . ." Thus, recognizing that " '[a]ssociation with gang members is the first step to involvement in gang activity,' " courts have appropriately prohibited defendants (including minors) from having contact with gang members or engaging in certain gang-related activities to prevent their future criminal behavior. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 622, 624–626 [barring defendant from being " 'involved in any gang activities or associat[ing] with any gang members, [or] wear[ing] or possess[ing], any item of identified gang clothing"]; *In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1500–1502.) "Whether the minor was currently connected with a gang has not been critical." (*People v. Lopez, supra*, at p. 624.)

Thus, under this case law, gang-related probation conditions are reasonably related to preventing future criminality when there is evidence the defendant is associating with members of a criminal street gang, even if the defendant is not him- or herself a full-fledged member. (*People v. Lopez, supra*, 66 Cal.App.4th at p. 626; *In re Laylah K., supra*, 229 Cal.App.3d at p. 1502 ["Where a court entertains genuine concerns that the minor is in danger of falling under the influence of a street gang, an order directing a

minor to refrain from gang association is a reasonable preventive measure in avoiding future criminality and setting the minor on a productive course"]; cf. *In re Edward B., supra*, 10 Cal.App.5th at p. 1234 [gang-related probation condition not tailored to minor's future criminality when the only evidence of minor's association with gang members was speculative].)

Such evidence of defendant's association with gang members was presented in this case, justifying the court's imposition of gang-related probation terms as a proportional means of deterring him from future criminality. (E.g., *People v. Lopez, supra*, 66 Cal.App.4th at p. 626.) As stated *ante*, under *Lent*'s conjunctive test, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the defendant's future criminality. (*In re Edward B., supra*, 10 Cal.App.5th at p. 1233.)

## DISPOSITION

The juvenile court order of March 14, 2023, is affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A167602/*People v. Preston G.*

7