Filed 2/19/25  In re Eric S. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ERIC S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ERIC S.,<br><br>  Defendant and Appellant. | A170932, A171747<br><br>(Solano County<br>Super. Ct. No. J44994) |

In February 2022, after Eric S. admitted to one count of murder committed when he was 17 years old, the Tulare County juvenile court placed him in a secure youth treatment facility (SYTF).  The following year, the case was transferred to Solano County.  Eric now appeals from a July 2024 order denying his request to reduce his baseline term of confinement and a September 2024 order transferring him to a less restrictive placement, raising several claims involving the court's dispositional rulings.

We agree with Eric that the juvenile court failed to adhere to the requirements of Welfare and Institutions Code[1] section 875 by not awarding precommitment credits, by mistakenly setting a maximum term of confinement (maximum term) that extends beyond his 25th birthday, and by failing to set a valid baseline term of confinement (baseline term). We therefore reverse the current maximum and baseline terms and remand for the court to reset those terms and calculate precommitment credits. We also modify a probation condition as the parties agree is appropriate. Otherwise, we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

The resolution of this appeal does not require a detailed description of the underlying facts. Briefly, Eric has admitted crimes involving firearms on two occasions. The first time arose out of an incident on June 14, 2020, when Eric was 16 years old, and he was found in possession of a loaded gun while at a Visalia mall. He also claimed to own a second loaded gun found in the possession of another minor who was present. Two days later, the Tulare County District Attorney filed a wardship petition alleging that the juvenile court had jurisdiction over Eric under section 602, subdivision (a). The petition contained two felony counts, carrying a concealed firearm on the person and carrying a stolen, loaded firearm in public.[2]

On June 22, 2020, Eric admitted both counts in exchange for deferred entry of judgment. The minute order noted that his maximum term of

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] The allegations were made under Penal Code sections 25400, subdivisions (a)(2) and (c)(4), and 25850, subdivisions (a) and (c)(2).

2

confinement was three years and eight months. The same day, the case was transferred to Solano County, where Eric was already in foster care. The probation department's motion for transfer stated that Eric had two days of custody credits, apparently based on his time in custody before he was released to his foster parent. Eric left his placement shortly after returning to Solano County, and a bench warrant was issued for him in July 2020.

The second incident occurred on January 19, 2021, when Eric killed Travis Chaney in Ivanhoe (Tulare County). That night, Eric, who had just turned 17 years old, was at the home of H.F., his new girlfriend. Chaney, who was married but had an on-and-off relationship with H.F.'s mother, arrived and began arguing with and threatening the mother. Chaney also argued with Eric and threatened to beat him up. During the commotion, Eric used a rifle he commonly carried to shoot Chaney, who was unarmed. Eric and H.F. ran away from the house together, and Eric was apprehended the following day.

On January 22, 2021, the Tulare County District Attorney filed another wardship petition under section 602, subdivision (a), alleging that Eric committed one count of murder. The petition also alleged that Eric personally and intentionally discharged a firearm causing death, personally and intentionally discharged a firearm, and personally used a firearm.[3] The petition sought a hearing on whether to transfer Eric to criminal court.

In July 2021, after a multiday hearing, the juvenile court denied the prosecution's motion to transfer Eric to criminal court. Before doing so, the court indicated that "[t]he only way" it could deny the motion was "if we don't

---

[3] The murder count was brought under Penal Code section 187, subdivision (a), and the firearm allegations were made under Penal Code section 12022.53, subdivisions (b) through (d).

have to wait for the jurisdiction hearing," since Eric "need[ed] every day that he can possibly get in the [Department of Juvenile Justice (DJJ)] program." Over the prosecution's objection to "an improper extraction of a plea," Eric then admitted the murder and firearm allegations.

That October, after the prosecution successfully sought writ relief in the Fifth District Court of Appeal, the juvenile court "withdr[ew Eric's] pleas" and reopened the transfer hearing for Eric to present evidence on the new SYTF that was replacing DJJ in Tulare County. Three months later, the court again denied the prosecution's transfer motion. Eric then admitted the murder and firearm allegations.

At a dispositional hearing on February 25, 2022, the juvenile court declared Eric a ward of the court and committed him to Tulare County's SYTF. The court also declared that Eric's maximum term was 50 years to life plus eight months, based on both the murder and the 2020 firearm-possession offenses.[4] The court did not orally set a baseline term, though it observed that it was "going to take [Eric] every bit of the seven years that [the court had] for this program to hopefully get him to the point where he would be strong enough to lead a productive life." The court's written order stated that Eric was committed to the SYTF "until the requirements of the program have been satisfactorily completed." Finally, the court did not

---

[4] As we discuss below, the juvenile court later reset this term on the basis that it violated the age limit on a ward's confinement under section 875, subdivision (c). In any case, this term was incorrect if it was meant to reflect the term an adult would receive. A sentence of 50 years to life reflects a conviction of *first degree* murder with an accompanying enhancement for personally and intentionally discharging a firearm causing death. (See Pen. Code, §§ 190, subd. (a), 12022.53, subd. (d).) Yet Eric admitted only a generic charge of murder under Penal Code section 187, subdivision (a), and the juvenile court never specified a degree of murder, meaning the offense is second degree murder.

address custody credits, although the probation report indicated that Eric had 404 days of credits, 2 days for time in custody after the 2020 offenses and 402 days for time in custody after the murder.

Throughout the next year of review hearings, the probation department's reports consistently stated that Eric's maximum term and baseline term were both seven years. At an August 2022 review hearing, Eric's counsel "clarif[ied] for the record" that Eric's maximum term was "six years, 318 days," the time between his commitment to the SYTF on February 25, 2022, and his 25th birthday, January 9, 2029. The juvenile court did not respond to this comment.

In July 2023, the juvenile court granted Eric's request to transfer the matter to Solano County and ordered Eric to receive "a case plan equivalent to the [SYTF] Program." The court also adopted the probation department's recommendation that the baseline term be reduced by six months, but the court did not state what the new baseline term was. The written transfer order stated that Eric's maximum term was 50 years to life plus eight months and that he had 906 total days of custody credits, but it likewise did not specify a baseline term.

The Solano County juvenile court accepted the transfer, and Eric was placed in that county's SYTF, RISE. At a September 2023 review hearing, Eric requested another reduction in the baseline term, which the court denied. At the next hearing that December, however, the court granted Eric's request for a six-month reduction. Eric also suggested the court should revisit the baseline term generally, given recent changes in the law.

In April 2024, Eric filed a motion to reduce the baseline term, which he stated was seven years, to four years. He argued that although the juvenile court was originally required to set the baseline term at seven years, under

5

newly adopted California Rules of Court, rule 5.806, it now had discretion to set the term between four and seven years.[5]  He then filed a separate petition under section 778 that likewise sought to reduce the baseline term to four years based on changed circumstances, consisting not only of changes to the law but also his significant progress in RISE.

At a June 2024 review hearing, before hearing Eric's motion and petition to reduce the baseline term, the juvenile court adopted the probation department's recommendation to reduce that term by another six months. Eric was also being considered for a less restrictive placement at Pine Grove Youth Conservation Camp (Pine Grove), a fire camp.

The juvenile court denied Eric's request to reduce the baseline term on July 8, 2024, stating that the term "remain[ed] at the seven years at this time."  The court characterized the request as an attempt to get "two bites of the apple," since Eric had already gotten three six-month reductions based on good behavior.  The court did not view the changed law as retroactive under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), meaning it could not alter what it assumed was the original seven-year baseline term by applying rule 5.806. The court also declined to reduce the term under section 778, disagreeing that Eric's rehabilitative needs had changed significantly after his transfer to RISE.  Eric appealed from this order (July 8 order), initiating no. A170932.

On August 21, 2024, the juvenile court held a hearing on the status of Eric's placement at Pine Grove.  During the hearing, the court stated that it "had to do some recalculation on the maximum term of confinement, because we had it at 50 to life, which is not the correct way to review that."  The court then stated the maximum term was six years and 11 months "from the date of when SYTF was entered on [February 25, 2022]."

---

[5] All further rule references are to the California Rules of Court.

At the next hearing, on September 11, 2024, the juvenile court committed Eric to Pine Grove "for the remainder of the baseline term," which the court stated was "15 months as of this date." The court also reiterated that the maximum term was six years and 11 months, and it stated that Eric's "total credits for the period of wardship" were 1,331 days. Finally, the court imposed several probation conditions, including an order that Eric not "have contact with the victim's widow, [N.S.]. And he's to stay away from the victim's residence or place of business." Eric also appealed from this order (September 11 order), initiating no. A171747. We consolidated the two appeals.

## II.
### DISCUSSION

A. *Remand Is Required for the Juvenile Court to Award Precommitment Custody Credits and to Correct the Maximum Term of Confinement.*

Eric claims the juvenile court erred by failing to award precommitment custody credits and improperly determined his maximum term. We conclude the matter must be remanded for the court to calculate precommitment credits. On remand, the court must also correct the maximum term to end by the time Eric turns 25 years old, at which point it may also exercise its discretion under the current version of section 875, subdivision (c)(1), to set an even lower maximum term.

Before the 2020 passage of juvenile justice realignment, DJJ "was 'the state's most restrictive placement for its most severe juvenile offenders.' " (*In re M.B.* (2024) 99 Cal.App.5th 435, 448 (*M.B.*).) The realignment program "included the transfer of DJJ's responsibilities to California's counties beginning on July 1, 2021 (§ 736.5, subd. (a)), and the closure of DJJ on June 30, 2023 (*id.*, subd. (e))." (*Ibid.*) As one aspect of this transfer,

7

"section 875 took effect on May 14, 2021, with the enactment of Senate Bill No. 92 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 18, § 12)." (*Ibid.*) Under section 875, beginning July 1, 2021, juvenile courts may commit wards meeting certain criteria to an SYTF. (§ 875, subd. (a).)

When placing a ward in an SYTF, the juvenile court must set "a maximum term of confinement." (§ 875, subd. (c)(1).) The maximum term cannot "exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses." (§ 875, subd. (c)(1)(B).) In addition, where, as here, the ward "would face an aggregate sentence of seven or more years" if convicted for the offenses in criminal court, "the ward shall not be held in secure confinement beyond 25 years of age, or two years from the date of commitment, whichever occurs later." (§ 875, subd. (c)(1)(A).) Finally, a ward's "[p]recommitment credits for time served must be applied against the maximum term of confinement." (§ 875, subd. (c)(1)(C).) We review de novo whether the court complied with these statutory requirements. (See, e.g., *In re M.W.* (2008) 169 Cal.App.4th 1, 4; *People v. Culp* (2002) 100 Cal.App.4th 1278, 1282.)

We begin with the custody credits issue. The Attorney General does not dispute that the juvenile court had a duty to calculate precommitment credits, which could not be delegated to the probation department. (See *In re Eric J.* (1979) 25 Cal.3d 522, 533–536; *In re Edward B.* (2017) 10 Cal.App.5th 1228, 1238.) Yet the court never calculated the credits that Eric accrued before he was committed to an SYTF in February 2022. At the September 11, 2024 hearing, the court stated that Eric had 1,331 days of total credits but did not specify how many of those days were accrued before his SYTF commitment.

Eric claims it is clear from the record that he is entitled to 407 days of precommitment credits, composed of 5 days for time spent in custody for the firearm-possession offenses and 402 days for time spent in custody for the murder before the February 2022 dispositional hearing. The June 2020 motion to transfer the case to Solano County, however, indicates that Eric accrued only two days of credits for his confinement for the firearm-possession offenses. Because the record lacks clarity and the Attorney General fails to address the issue, we conclude it is appropriate to remand for the juvenile court to calculate precommitment credits in the first instance. Depending on that calculation, Eric's total number of credits may also need to be modified.

We now turn to issues involving the maximum term. The juvenile court determined that the initially imposed term of 50 years to life plus eight months was wrong under section 875, subdivision (c), because it extended beyond Eric's 25th birthday.[6] On appeal, the Attorney General does not contest that Eric's maximum term of confinement cannot extend beyond his 25th birthday. We therefore agree with Eric that the current maximum term of six years and 11 months is still incorrect because it only approximates the time between the original dispositional order and his 25th birthday. (But see *M.B.*, *supra*, 99 Cal.App.5th at pp. 460–461 & fn. 21 [holding that juvenile's maximum term could be 22 years and characterizing 25th-birthday limit as

---

[6] We disagree with the Attorney General that the juvenile court effectively set a maximum term of seven years in February 2022, based on its statement that Eric would need "every bit of the seven years" he could get in an SYTF. At the same hearing, the court unambiguously stated that the maximum term was 50 years to life plus eight months, and it is more reasonable to conclude the court was referring to a seven-year *baseline* term. In any event, the only maximum term we are reviewing is the one set in 2024.

"separate cap" on confinement].)  The original dispositional order was entered on February 25, 2022, and Eric turns 25 years old on January 9, 2029, which is six years, 10 months, and 15 days later.

Eric also claims that even apart from the approximation problem, the juvenile court erred in resetting the maximum term because it failed to exercise its discretion to set an even lower term.  When Eric was committed to an SYTF in February 2022, section 875, subdivision (c), limited the maximum term based only on a ward's age and the sentence an adult would receive for the same offenses.  (Former § 875, subd. (c)(1)–(2).)  Effective June 30, 2022, section 875 was amended to provide that the maximum term must be "based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation."  (Stats. 2022, ch. 58, § 41; § 875, subd. (c)(1).)  As the parties agree, this amendment gave courts the discretion to set a maximum term lower than that otherwise limited by age and adult sentencing.  (*M.B.*, *supra*, 99 Cal.App.5th at pp. 460–461.)

When the juvenile court reset the maximum term at six years and 11 months, this statutory amendment had been in effect for over two years.  Although the court did not explicitly state it was exercising its discretion to consider a downward departure, we disagree with Eric that "the record shows that the court believed its task was merely making arithmetical calculations rather than assessing [his] rehabilitative needs."  On a silent record, we generally presume the lower court understood and followed the applicable law.  (*Ruelas v. Superior Court* (2015) 235 Cal.App.4th 374, 383.)  Nonetheless, remand is independently required for the court to award precommitment credits, and the maximum term must be corrected anyway to reflect the court's intent that it not extend beyond Eric's 25th birthday.

10

Thus, on remand Eric may seek a further reduction in the maximum term based on "the facts and circumstances" of his offenses and his rehabilitative needs.  (§ 875, subd. (c)(1).)

>    B.    *The Baseline Term Must Be Reset on Remand.*

Next, Eric claims the juvenile court failed to set a baseline term as required.  He also claims the court abused its discretion by denying his request to reduce the term to four years.  We conclude that in denying Eric's request for a reduction, the court failed to recognize that the February 2022 dispositional order did not actually set a baseline term.  We also conclude that a term of seven years is incorrect.  Therefore, on remand the court must reset the term under current law.

>    1.    General legal standards

When committing a ward to an SYTF, the juvenile court is required to set "a baseline term of confinement" (§ 875, subd. (b)(1)), which is roughly analogous to what used to be known as a parole consideration date.  (See *M.B.*, *supra*, 99 Cal.App.5th at pp. 468–469.)  The baseline term "is based on the most serious recent offense for which the ward has been adjudicated" and "represent[s] the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community."  (§ 875, subd. (b)(1).)  The baseline term must "be determined according to offense-based classifications that are approved by the Judicial Council," which was directed to "develop and adopt a matrix" of such classifications by July 1, 2023.  (§ 875, subds. (b)(1), (h).)

Pending the Judicial Council's adoption of this matrix, courts were required to "set a baseline term . . . utilizing the discharge consideration date guidelines applied by the [DJJ] prior to its closure" under California Code of

11

Regulations, title 9, sections 30807 to 30813. (§ 875, subd. (b)(1).) Section 875 also provided that courts could, "pending the adoption of Judicial Council guidelines, modify the initial baseline term with a deviation of plus or minus six months." (§ 875, subd. (b)(1).) Under the DJJ regulations, the offense of murder required "[a] parole consideration date interval of seven years" (Cal. Code Regs., tit. 9, § 30807, subd. (a)), meaning that when Eric was initially committed to an SYTF in February 2022, his presumptive baseline term was seven years.

The Judicial Council adopted baseline-term guidelines effective July 1, 2023. (Rule 5.806.) Under the guidelines, murder is a category A offense for which the baseline term must be between four and seven years. (Rule 5.806(d).) Rule 5.806 lists four general criteria that juvenile courts must consider in selecting a baseline term "based on the individual facts and circumstances of the case . . . that is no longer than necessary to meet the developmental needs of the youth and to prepare the youth for discharge to a period of probation supervision in the community." (Rule 5.806(b).) These criteria are: "(1) [t]he circumstances and gravity of the commitment offense"; "(2) [t]he youth's prior history in the juvenile justice system"; "(3) [t]he confinement time considered reasonable and necessary to achieve the rehabilitation of the youth"; and "(4) [t]he youth's developmental history." (*Ibid.*) Rule 5.806 also contains a nonexclusive list of relevant factors to be weighed when evaluating each criterion. (*Ibid.*) Under the rule, a court must "state on the record its reasons for selecting a particular term, referencing each of the criteria and any factors the court deemed relevant." (*Ibid.*)

Again, we review de novo whether the juvenile court complied with statutory and other legal requirements. When making a discretionary

12

decision, a court abuses its discretion if it applies the incorrect legal standards. (*In re Shannon M.* (2013) 221 Cal.App.4th 282, 289–289.)

        2.     Analysis

We begin by agreeing with Eric that the Tulare County juvenile court failed to set a baseline term in the February 2022 dispositional order. The court did not orally pronounce a baseline term, and the written order stated only that Eric was committed to an SYTF until he completed the program's requirements.

The Attorney General argues that there was an "implied setting of the baseline at seven years." We are not persuaded. Although the juvenile court's comment at the February 2022 hearing about needing "every bit of the seven years" to rehabilitate Eric could be construed to refer to the baseline term, it is too ambiguous to constitute a setting of that term. Moreover, at the time of this hearing the juvenile court had discretion to depart from the seven-year baseline term for murder by up to six months. (§ 875, subd. (b)(1); see Cal. Code Regs., tit. 9, § 30807, subd. (a).) Thus, there was no single mandated term we can presume the court intended to impose. Clearly, the parties and the court *assumed* the original baseline term was seven years, but the Attorney General does not provide any authority to suggest that this assumption was binding. In short, we conclude the court did not validly set a baseline term in the original dispositional order.

This omission is significant, because it undermines an essential basis for the July 8 order denying Eric's request to decrease the baseline term. Citing *Estrada*, the juvenile court appeared to conclude that it lacked authority to modify the baseline term by applying the Judicial Council guidelines in rule 5.806 implemented after the original dispositional hearing. Had the Tulare County juvenile court actually set a baseline term in

13

February 2022, we might agree that Eric was not entitled to the ameliorative benefits of rule 5.806 because the original dispositional order was final. (See *In re Hunter W.* (2023) 88 Cal.App.5th 358, 366–369 [ward not entitled to ameliorative benefit of new law enacted after the order committing him to DJJ became final].) But the court did not announce on the record what the baseline term was until over two years later, when it said the term remained at seven years, at which point rule 5.806 was already in effect. Thus, the February 2022 order did not constrain the court from setting a term under the current legal standards.

Moreover, as the Attorney General recognizes, even if the juvenile court had otherwise validly set a seven-year baseline term in February 2022 or July 2024, that term would still be incorrect because it extends beyond Eric's 25th birthday. In addition, the court never stated what Eric's modified baseline term was in light of the three six-month reductions already granted. On September 11, 2024, the court said that 15 months of the baseline term remained, but we are unable to discern the basis for that calculation. If the baseline term had originally been seven years and was reduced by 18 months, then the modified term would be five years and six months. Five years and six months from February 25, 2022, is August 25, 2027, but 15 months from September 11, 2024, is December 11, 2025. And this additional reduction cannot be attributed to precommitment custody credits, which must be applied against the maximum term, not the baseline term. (§ 875, subd. (c)(1)(C); *M.B.*, *supra*, 99 Cal.App.5th at p. 464.)

In short, the juvenile court did not set the baseline term until it ruled on July 8, 2024, that the term remained at seven years, and that term is incorrect. The court also confused matters by stating in the September 11 order that 15 months of the baseline term remained. Therefore, we reverse

14

the seven-year term, and we direct the court on remand to reset the term under current law. In calculating how long a baseline term remains, the court must give Eric the benefit of the 18-month reduction already granted.

> C. *We Modify the Probation Condition Prohibiting Contact with the Victim's Widow.*

Finally, Eric claims that a probation condition prohibiting contact with Chaney's widow and directing him "to stay away from the victim's residence or place of business" is unconstitutionally vague and overbroad. We modify the condition in the manner the parties agree is appropriate.

When committing Eric to Pine Grove on September 11, 2024, the juvenile court orally imposed various probation conditions, including that he not "have contact with the victim's widow, [N.S.]. And he's to stay away from the victim's residence or place of business." The court also signed a written order, prepared by the probation department, that prohibited Eric from having contact with "Victim's widow [N.S.]" and directed him to "Stay Away from: Victim N.S. residence or place of business."[7] Eric did not object to this condition.

" 'A probation condition "must be sufficiently precise for the [ward] to know what is required . . . , and for the court to determine whether the condition has been violated," if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' " (*In re L.J.* (2021) 72 Cal.App.5th 37, 53, quoting *In re Sheena K.*

---

[7] Eric states in his briefing that the September 11 minute order does not reflect this probation condition. In fact, the minute order incorporates the "terms and conditions of wardship," which are reflected in the written order referred to above.

15

(2007) 40 Cal.4th 875, 890.) Where, as here, an appellant raises a claim of vagueness or overbreadth for the first time on appeal, it is not forfeited if the error "is capable of correction without reference to the particular sentencing record developed in the [lower] court." (*Sheena K.*, at p. 887.) We review such claims de novo. (*L.J.*, at p. 53.)

Eric claims the probation condition at issue is vague for various reasons, including because (1) the oral condition refers to both "the victim's widow" and "the victim" and (2) a person's "residence" and "place of business" are not "specific identifiable place[s]." Eric also claims the condition is overbroad because it requires him to "stay away from unidentified locations" without any "geographic limitations." The Attorney General responds that the condition can be modified to address these concerns by specifying that Eric "not . . . knowingly get within 50[]yards of [N.S.'s] home or business," and Eric states that "[t]his modification is acceptable to [him]." Accordingly, we modify the condition in accordance with the parties' agreement.

## III.
### DISPOSITION

The July 8, 2024 ruling that Eric's baseline term of confinement is seven years and the September 11, 2024 ruling that Eric's maximum term of confinement is six years and 11 months are reversed. The probation condition imposed on September 11, 2024, requiring Eric to have no contact with N.S. is modified to specify that Eric "not have contact with N.S. and not knowingly go within 50 yards of N.S.'s home or place of business." The matter is remanded for the juvenile court to award Eric precommitment credits and set a maximum term of confinement and baseline term of confinement in accordance with this opinion. In all other respects, the July 8 and September 11 orders are affirmed.

16

_____

Humes, P. J.


WE CONCUR:


_____

Banke, J.


_____

Smiley, J.


*In re Eric S.* A170932, A171747