Filed 6/4/25  In re E.V. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>E.V.,<br><br>        Defendant and Appellant. | A171123<br><br>(Solano County<br>Super. Ct. No. JV24-00056) |

Defendant E.V. appeals a dispositional order adjudging him a juvenile court ward pursuant to Welfare and Institutions Code[1] section 602, committing him to the county juvenile detention facility (JDF), and placing him under home supervision after his release from JDF subject to various probationary terms and conditions.  He contends the juvenile court abused its discretion in committing him to JDF.  The People argue, and E.V. in his reply brief concedes, that this challenge is moot because E.V. has since been

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

released from JDF.[2] We agree with the parties and conclude E.V.'s challenge to his commitment to JDF is moot.

E.V. also challenges four of his conditions of probation on various grounds. We conclude that two of the probation conditions require modification and one must be stricken. We will modify or strike those probation conditions and affirm the dispositional order as modified.

## BACKGROUND

According to the probation reports, on June 13, 2024, a woman left a nail salon in Antioch with her daughters, aged four and 10. She was putting her younger daughter in her car when L.M., the accomplice of then 14-year-old E.V., pointed a gun at them. L.M. said, " '[G]ive me all your shit bitch' and 'I swear to god I'm going to shoot you.' " E.V. went through the victim's purse and removed her jewelry.

Police officers saw two minors who matched the dispatcher's description of the suspects running away from the shopping center. The minors were later identified as E.V. and L.M. One of the officers ordered E.V. to stop, but he continued to run away. The officer was able to subdue E.V. and handcuff him. E.V. had a loaded, unregistered semi-automatic handgun in the pocket of his sweatshirt.

On June 17, the Contra Costa County District Attorney filed a petition under section 602, subdivision (a) alleging E.V. committed three felonies: second degree robbery (Pen. Code, § 211; count 1), with an enhancement that he was armed with a firearm while committing the robbery (*id.*, § 12022, subd. (a)(1)); carrying an unregistered, loaded firearm in public (*id.*, § 25850,

---

[2] We previously granted the People's motion to augment the record to include the juvenile court's post-dispositional orders indicating E.V.'s release from JDF.

2

subds. (a), (c)(6); count 2); and carrying a concealed firearm in a vehicle (*id.*, § 25400, subd. (a)(1); count 3).

On June 24, the petition was amended to reduce count 2 to a misdemeanor and add two counts: felony grand theft (Pen. Code, § 487, subd. (c); count 4) and misdemeanor resisting arrest (*id.*, § 148, subd. (a)(1); count 5). E.V. entered a plea of no contest to counts 2, 4, and 5. The Contra Costa County juvenile court sustained the admitted allegations, granted the prosecution's motion to dismiss the remaining allegations, and transferred the case for disposition to Solano County, E.V.'s county of residence.

At the dispositional hearing on July 18, the Solano County juvenile court adjudged E.V. a ward of the court (§ 602). The court committed E.V. to JDF for 199 days (i.e., until November 14), and ordered he be placed on 45-day home supervision with an ankle monitor upon his release from JDF, subject to various probationary terms and conditions. They included that E.V. shall "attend school . . . regularly and maintain satisfactory grades . . . and obey school rules"; "attend counseling" of a type determined by the probation officer; pay a restitution fine of $100; and "submit to drug and alcohol testing by any peace officer."

This appeal followed.

## DISCUSSION

### E.V.'s Challenge to His Commitment to JDF Is Moot

E.V.'s first argument is that the juvenile court abused its discretion in committing him to JDF instead of placing him under home supervision. The People assert that this claim is moot because E.V. has been released from JDF and, thus, this court cannot provide E.V. any effective relief. In his reply brief, E.V. concedes the People's assertion.

As a general rule, appellate review is limited to an actual controversy.

3

A case that involves " 'only abstract or academic questions of law cannot be maintained. [Citation.]' [Citation.] Moreover, ' "[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed." ' " (*People v. DeLong* (2002) 101 Cal.App.4th 482, 486; see *People v. Rish* (2008) 163 Cal.App.4th 1370, 1380 [" 'a case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief.' "].) For example, where a defendant has completed a sentence, his or her claims of error as to that sentence are moot "because a reviewing court's resolution of the issues could offer no relief regarding the time he spent in custody . . . ." (*People v. DeLeon* (2017) 3 Cal.5th 640, 645.)

E.V.'s claim is that the juvenile court abused its discretion when it committed him to JDF as opposed to ordering less restrictive, alternative placement for him. Since E.V. has been released from JDF, there is no longer a justiciable controversy. We thus agree with the parties that E.V.'s challenge to his commitment is moot.

Courts sometimes have discretion to decide an issue even when it is moot. (See *Sturgell v. Department of Fish & Wildlife* (2019) 43 Cal.App.5th 35, 46.) That discretion is generally exercised when the case presents an issue of broad public interest that is likely to recur, when there may be a recurrence of the controversy between the parties, or when a material question remains for the court's determination. (*In re D.P.* (2023) 14 Cal.5th 266, 282.) Here, E.V. does not ask us to exercise our discretion to reach the merits of his moot challenge. In fact, he argues that discretionary review is inappropriate, asserting that "the record on appeal provides insufficient support to argue this Court should exercise its discretion and address the

4

merits of his claim." We therefore decline to exercise our discretion to decide E.V.'s challenge to his commitment to JDF.

## Three Conditions of Probation Must Be Modified or Stricken

### *General Legal Principles*

When a juvenile court places a minor on probation, it " 'may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' [Citations.] ' "In fashioning the conditions of probation, the . . . court should consider the minor's entire social history in addition to the circumstances of the crime." ' [Citation.] The court has 'broad discretion to fashion conditions of probation' [citation], although 'every juvenile probation condition must be made to fit the circumstances and the minor.' " (*In re P.O.* (2016) 246 Cal.App.4th 288, 293–294 (*P.O.*).) "Generally, we review the court's imposition of a probation condition for an abuse of discretion. [Citations.] However, we review constitutional challenges to a probation condition de novo." (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

With these principles in mind, we turn to E.V.'s challenges to his probation conditions, addressing them in a slightly different order than he presents them in his opening brief.

### *Condition No. 1: "Attend School . . . Regularly" and "Maintain Satisfactory Grades"*

One of the probation conditions E.V. challenges, no. 1, requires E.V. to "attend school . . . regularly and maintain satisfactory grades in the grading system utilized by [his] school in a manner consistent with identified physical or medical limitations, and obey school rules." E.V. argues that the requirements to "attend school . . . regularly" and "maintain satisfactory grades" are unconstitutionally vague. Although E.V. did not raise any

5

objection to this condition at his dispositional hearing, the People acknowledge—and we agree—that we may consider E.V.'s claim because he is challenging the condition as facially vague, "without reference to the particular sentencing record developed in the trial court." (*In re Sheena K.* (2007) 40 Cal.4th 875, 887 (*Sheena K.*).) "In such circumstances, an issue of law arises that is subject to de novo review on appeal." (*In re Edward B.* (2017) 10 Cal.App.5th 1228, 1236–1237.) We thus address the merits of E.V.'s arguments, beginning with a discussion of the principles on vagueness.

"[J]uvenile courts have 'broad discretion to fashion conditions of probation' to further a minor's rehabilitation [citation], but '[a] probation condition "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated," if it is to withstand a challenge on the ground of vagueness.' [Citation.] '[T]he underpinning of a vagueness challenge is the due process concept of "fair warning." [Citation.] The rule of fair warning consists of "the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders" [citation], protections that are "embodied in the due process clauses of the federal and California Constitutions." ' " (*P.O.*, *supra*, 246 Cal.App.4th at p. 299, quoting *Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

We start with the requirement in condition no. 1 that he "attend school . . . regularly." E.V. argues the requirement "is vague because it does not notify him or his mother whether a single unexcused absence from a class would constitute a probation violation . . . ." Our colleagues in Division One rejected the same argument by a minor who was also directed to " 'attend school regularly.' " (*In re D.H.* (2016) 4 Cal.App.5th 722, 730 (*D.H.*).) The *D.H.* court explained that while the "command to attend 'regularly' is

6

arguably vague in a vacuum," viewed in context and alongside the command that the minor "[o]bey school rules," the condition was sufficiently precise and did not require modification. (*Ibid*.)  Here, as in *D.H.*, the requirement that E.V. "attend school . . . regularly," when read together with the other requirement that he "obey school rules," is sufficiently clear for an average juvenile of E.V.'s age to understand.  Thus, under *D.H.*, the requirement to attend school regularly is not unconstitutionally vague and requires no modification.

We turn to E.V.'s other assertion that the requirement that E.V. "maintain satisfactory grades" is unconstitutionally vague.  E.V. relies on *In re Angel J.* (1992) 9 Cal.App.4th 1096 (*Angel J.*), in which the court held that in order to pass constitutional muster, a probation condition requiring the minor to maintain "satisfactory grades" required a more specific definition. (*Id.* at p. 1102.)  *Angel J.* defined "satisfactory grades" as passing grades in each graded subject—that is, "not failing, such as a D or above in an A through F grading system"—and modified the condition of probation accordingly.  (*Ibid.* & fn. 7.)

E.V.'s assertion is well taken.  Similar to the condition in *Angel J.,* the portion of condition no. 1 stating E.V. shall "maintain satisfactory grades" requires a more specific definition.  We therefore modify the phrase "maintain satisfactory grades in the grading system utilized by the youth's school" to state: "maintain passing grades (meaning not failing, such as a D or above in an A through F grading system) in each graded subject."  (See *Angel J.*, *supra*, 9 Cal.App.4th at pp. 1102 & fn. 7.)

### Condition No. 4:  Attend Counseling of a Type Determined by the Probation Officer

Probation condition no. 4 requires E.V. "to attend counseling of a type determined by the probation officer and as directed by the probation officer."

7

E.V. argues this condition violates the separation of powers doctrine because it delegates to the probation officer the authority to decide the type of counseling E.V. must participate in.

The People again acknowledge that while E.V. did not object to condition No. 4, we may still consider his challenge to that condition, since it presents a pure question of law. (See *Sheena K.*, *supra*, 40 Cal.4th at pp. 888–889; *People v. Smith* (2022) 79 Cal.App.5th 897, 902 (*Smith*).) Once again, we agree. We thus turn to the merits of E.V.'s challenge to the juvenile court's delegation—and conclude such claim is unavailing.

As noted above, a juvenile court has broad discretion to establish probation conditions. (*P.O.*, *supra*, 246 Cal.App.4th at pp. 293–294.) At the same time, "[u]nder the separation of powers doctrine (Cal. Const., art. III, § 3), judicial powers may not be delegated to nonjudicial officers." (*Smith*, *supra*, 79 Cal.App.5th at p. 902.) The "general rule is that a court may dictate the basic policy of a condition of probation, leaving specification of details to the probation officer. . . . However, the court's order cannot be entirely open-ended. It is for the court to determine the nature of the prohibition placed on a defendant as a condition of probation." (*In re Victor L.* (2010) 182 Cal.App.4th 902, 919; accord, *In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372 ["The probation officer may recommend probation terms, but it is the court's responsibility to tailor the conditions specifically to each minor."].)

Here, the juvenile court ordered E.V.'s participation in counseling, but left the selection of which counseling program to the probation officer. Contrary to E.V.'s assertion, that delegation was permissible, as it "falls within the . . . general rule that a court may dictate the basic policy of a condition of probation, leaving specification of details to the probation

8

officer." (*In re Victor L.*, *supra*, 182 Cal.App.4th at p. 919.)

*People v. Penoli* (1996) 46 Cal.App.4th 298 (*Penoli*), a case cited by the People, supports our conclusion. In *Penoli*, the defendant made a similar challenge to a probation condition that required her to enter a residential drug treatment program " 'as approved by the Probation Officer.' " (*Penoli*, *supra*, 46 Cal.App.4th at p. 301.) This court rejected the defendant's argument that the condition unlawfully delegated authority to the probation department to unilaterally select a drug rehabilitation program. (*Id.* at pp. 307–308.) We reasoned: "any attempt to specify a particular program at or prior to sentencing would pose serious practical difficulties. The trial court is poorly equipped to micromanage the selection of a program, both because it lacks the ability to remain apprised of currently available programs and, more fundamentally, because entry into a particular program may depend on mercurial questions of timing and availability." (*Id.* at p. 308.) We further observed that the delegation did not place the defendant "completely at the mercy of the probation department." (*Ibid.*) The defendant was permitted to bring any concerns she had to the court's attention. The defendant could also seek judicial intervention by moving to modify the probation order if the probation officer sought to exercise the delegated authority. (*Ibid.*)

In this case, it was appropriate and reasonable for the juvenile court to authorize the probation officer to select a specific counseling program for E.V. because, as in *Penoli*, the court may not be as well equipped to micromanage the selection of such programs. (*Penoli*, *supra*, 46 Cal.App.4th at p. 308.) In addition, the delegation here does not place E.V. "completely at the mercy of the probation department." (*Ibid.*) If E.V. disagrees with any specific program identified by the probation officer, he could "seek judicial intervention" (*ibid.*) by petitioning "to change, modify, or set aside" the

9

probation condition to ensure that the program is necessary and properly related to his rehabilitation.  (§ 778, subd. (a)(1).)  Thus, as in *Penoli*, we decline to hold that the delegation of authority to probation to select an appropriate counseling program for E.V. was erroneous.

E.V.'s arguments do not convince us otherwise.  E.V. tries to distinguish *Penoli* on the ground that the condition there identified the type of program the defendant was supposed to attend (residential drug treatment), whereas the condition here gives the probation officer gave the probation officer "carte balance [*sic*]" authority "to order any type of counseling program."  We are unpersuaded.  Although the condition in *Penoli* was arguably more specific than the condition here because it required the defendant's participation in a "residential drug treatment program," it similarly lacked details such as the type of drug treatment and its location and frequency.  Further, E.V.'s claim that the condition gives the probation department carte blanche authority to order his participation "in any type of counseling program" is not well taken.  We presume that the probation officer will not make irrational demands that E.V. participate in programs that are unrelated to his needs.  (See *People v. Stapleton* (2017) 9 Cal.App.5th 989, 996 [" 'A probation condition should be given "the meaning that would appear to a reasonable, objective reader," ' " and we do not presume that the probation officer will issue irrational or capricious directives], citing *People v. Olguin* (2008) 45 Cal.4th 375, 383.)

E.V. mentions in passing *Smith*, which he explains involved "a probation condition 'entrusting the decision whether to mandate residential treatment to the probation officer' [that] was deemed an unconstitutional delegation of judicial authority."  To the extent E.V. suggests *Smith* supports invalidating the condition at issue here, we disagree.  *Smith* involved an

10

entirely different context and is therefore inapposite.

*Smith* concerned a probation condition requiring the defendant " 'to participate in any treatment/therapy/counseling program, including residential, as directed by the probation officer.' " (*Smith*, *supra*, 79 Cal.App.5th at p. 902.)  Our Division Five colleagues held that the condition improperly delegated to the probation officer the discretion to require the defendant's participation in residential treatment as opposed to an outpatient program.  (*Id.* at p. 903.)  In reaching its conclusion, *Smith* relied on federal cases holding that a condition that affects a significant liberty interest, such as one requiring residential treatment, must be imposed by a court, not a probation officer.  (*Ibid.*, citing *United States v. Martinez* (5th Cir. 2021) 987 F.3d 432, 435, *United States v. Matta* (2d. Cir. 2015) 777 F.3d 116, 122–123, *United States v. Mike* (10th Cir. 2011) 632 F.3d 686, 695–696, and *United States v. Esparza* (9th Cir. 2009) 552 F.3d 1088, 1091.)  As one of those cases explained, "[I]npatient drug treatment programs are sufficiently more restrictive than outpatient programs that the difference between the two programs might be said to be the difference between liberty and the loss of liberty." (*United States v. Matta*, *supra*, 777 F.3d at p. 122.)  " '[I]n light of this difference . . . , granting the probation officer the discretion to decide whether such conditions will be imposed is tantamount to allowing him to decide the nature or extent of the defendant's punishment,' " and thus "any condition that affects a significant liberty interest, such as one requiring the defendant to participate in residential treatment . . . must be imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing.' " (*Id.* at p. 123.)

A condition authorizing probation to select a specific counseling

11

program is very different from a condition authorizing probation to require participation in residential treatment. A requirement to attend counseling is obviously much less restrictive and does not raise "significant liberty interests." (*Smith, supra,* 79 Cal.App.5th at p. 903.) Accordingly, we do not find the reasoning of *Smith* or the cited federal cases applicable here.

In sum, we conclude that condition no. 4 was not an unconstitutional delegation of judicial authority.

We next address E.V.'s argument under section 729.2, subdivision (b) (section 729.2(b)). Section 729.2 mandates various conditions when the juvenile court grants probation, "except in any case in which the court makes a finding and states on the record its reasons that that condition would be inappropriate." Without this finding, and unless the minor is also a dependent of the court or subject to a pending dependency petition, the court "shall . . . [¶] [¶] [r]equire the parents or guardian of the minor to participate with the minor in a counseling or education program, including, but not limited to, parent education and parenting programs operated by community colleges, school districts, or other appropriate agencies designated by the court or the probation department . . . ." (§ 729.2(b).)

E.V. argues that under section 729.2(b), "the Legislature imposed the duty to determine what type of counseling program would further a minor's rehabilitation on the juvenile court, not the probation department." E.V. then generally describes the separation of powers doctrine, before going on to assert, "[a]lthough section 729.2[(b)] expressly allows a court to delegate to the probation department to 'designate' an 'appropriate agency' for the type of counseling the court has required, the condition here delegates even the authority to decide what counseling the minor needs."

E.V.'s argument is not entirely clear. But he appears to assert that in

12

addition to violating the separation of powers doctrine, the juvenile court violated statutory law when it imposed condition no. 4. If that is his argument, we disagree, as explained below.

As another initial matter, while E.V. focuses on section 729.2(b), the probation department cited another provision—section 727, subdivision (c) (section 727(c))—in recommending condition no. 4. As did the juvenile court when it imposed the condition at the dispositional hearing. Section 727(c) permits ordering a juvenile court ward to participate in a counseling or education program, but uses slightly different language than section 729.2(b): "If a minor has been adjudged a ward of the court . . . , and the court finds that notice has been given . . . , and if the court orders that a parent or guardian shall retain custody of that minor either subject to or without the supervision of the probation officer, the parent or guardian *may* be required to participate with that minor in a counseling or education program, including, but not limited to, parent education and parenting programs operated by community colleges, school districts, or other *appropriate agencies designated by the court.*" (§ 727(c), italics added.) Unlike section 729.2(b), section 727(c) uses permissive language—the word "may"—in describing the authority to require the minor's and parent's participation in counseling. Also, it expressly permits the court to designate an "appropriate agenc[y]" for the counseling program; it does not also confer such authority on the probation department.

In his opening brief's discussion of the relevant proceedings below, E.V. mentions the juvenile court relied on section 727(c) in imposing condition no. 4. However, he does not address that provision at any other point in his brief, let alone explain how it relates to section 729.2(b). Thus, to the extent E.V. relies on section 729.2(b), he fails to demonstrate why that provision, as

13

opposed to section 727(c), applies. However, because the People also rely on 729.2(b) as a further basis to uphold condition no. 4, we assume without deciding that section 729.2(b) governs.

Turning to E.V.'s argument under 729.2(b), we disagree that it should be interpreted as "impos[ing] the duty to determine what type of counseling program would further a minor's rehabilitation on the juvenile court, not the probation department." It is true that the provision does not expressly authorize a juvenile court to delegate to probation the decision to select a specific counseling program for a ward. But it does not expressly prohibit such delegation either. In interpreting section 729.2, we find guidance from the Judicial Council, which has approved form JV-624. (Judicial Council Forms, form JV-624 (rev. Jan. 1, 2012) (Terms and Conditions).) That form cites among other provisions section 729.2 and sets out terms and conditions for juvenile probation. One of the terms and conditions states, "The parent or legal guardian must participate in a program of counseling or education *as directed by the probation officer.*" (*Ibid.*, italics added.) Also, item 11 states, "The child must [¶] . . . [¶] [p]articipate in individual, group, or family counseling, *as directed by the probation officer . . . .* " (*Ibid.*, italics added.) The use of the phrase "as directed by the probation officer," which modifies "counseling," suggests that the Judicial Council has interpreted section 729.2 to permit the juvenile court to authorize the probation department to direct the specific counseling program that the minor and his or her parents or guardian must attend.

The Judicial Council's interpretation of the statute, as reflected in form JV-624, while not binding, is highly persuasive and entitled to great weight. (See *In re M.B.* (2011) 201 Cal.App.4th 1057, 1063; see also *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011.) We thus defer to the Judicial

14

Council's interpretation of section 729.2.  Applying that interpretation here, we reject E.V.'s assertion that the juvenile court violated that section by authorizing the probation department to select a counseling program for E.V.

That said, we do find the juvenile court failed to comply with section 729.2(b) to the extent it "str[uck] the portion [of condition no. 4] that requires the parents are ordered to attend."  As recited above, section 729.2 generally requires that the court order "the parents or guardian of the minor to participate with the minor in a counseling or education program . . . ." (§ 729.2(b).)  Under the statute, the court was required to order E.V.'s parents, not just E.V., to participate in counseling.[3]  Accordingly, we will modify condition no. 4 to require E.V.'s parents to participate in counseling with E.V.

### *Condition No. 9:  Pay a Restitution Fine*

Probation condition no. 9 requires E.V. to pay a $100 restitution fine pursuant to section 730.6.  At the time of his dispositional hearing, section 730.6, subdivision (a)(2)(A) directed the juvenile court to impose a restitution fine on juvenile offenders.  (Stats. 2015, ch. 131, § 1.)  Under subdivision (b)(1) of section 730.6, the minimum restitution fine for a minor found responsible for a felony was $100.  (*Ibid*.)

Effective January 1, 2025, Assembly Bill No. 1186 (2023–2024 Reg. Sess.) (Assembly Bill No. 1186) amended section 730.6 to provide in pertinent part:  "The court shall not impose a separate and additional restitution fine

---

[3]     The court was also required to do so under section 727, subdivision (d)(2), which states:  "If counseling or other treatment services are ordered for the minor, the parent, guardian, or foster parent shall be ordered to participate in those services, unless participation by the parent, guardian, or foster parent is deemed by the court to be inappropriate or potentially detrimental to the minor."

15

against a minor found to be a person described in Section 602." (§ 730.6, subd. (a)(2); Stats. 2024, ch. 805, § 6.)

E.V. argues that he is entitled to the benefit of the amendment to section 730.6 under the rule established by *In re Estrada* (1965) 63 Cal.2d 740, 744 (*Estrada*). The *Estrada* rule states: " '[W]here the amendatory statute mitigates punishment and there is no saving clause, . . . the amendment will operate retroactively so that the lighter punishment is imposed' in all cases in which judgment was not yet final when the amendment took effect. [Citation.] Cases in which judgment is not yet final include those in which a conviction has been entered and sentence imposed but an appeal is pending when the amendment becomes effective. [Citations.] The *Estrada* rule has been applied to juvenile delinquency judgments. [Citation.]" (*In re N.D.* (2008) 167 Cal.App.4th 885, 891.) E.V. therefore asserts we should vacate his restitution fine. The People concede the point.

We accept the People's concession. We therefore strike the $100 restitution fine.

### *Condition No. 11: Submit to Alcohol Testing*

Lastly, E.V. argues that probation condition no. 11 requiring him to submit to alcohol testing is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), superseded on another ground as stated in *People v. Wheeler* (1992) 4 Cal.4th 284, 290–291.

Preliminarily, the People argue E.V. forfeited his claim by not objecting to the condition below. E.V. acknowledges he did not object below, but asks us to exercise our discretion to consider the claim on its merits. Alternatively, if the claim is forfeited, he asserts his trial counsel rendered ineffective assistance by failing to object. We exercise our discretion to

16

excuse any forfeiture and reach the merits of E.V.'s claim to forestall any claim of ineffective assistance of counsel. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [an appellate court has authority to reach a claim not cognizable on appeal]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider claims not cognizable on appeal to forestall ineffective assistance of counsel arguments].)

Turning to the merits, E.V. asks us to strike the alcohol testing condition as unreasonable under *Lent*. In *Lent*, our Supreme Court stated the criteria for assessing the validity of a probation condition: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality[.]' [Citations.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Lent*, *supra*, 15 Cal.3d at p. 486.) "The *Lent* test 'is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).)

"Adult and juvenile probation conditions are reviewed under the *Lent* criteria. [Citation.] A condition that would be improper for an adult is permissible for a juvenile only if it is tailored specifically to meet the needs of the juvenile. [Citation.] In determining reasonableness, courts look to the juvenile's offenses and social history." (*In re Edward B., supra,* 10 Cal.App.5th at p. 1233.)

"In applying *Lent*, we review the imposition of a probation condition for an abuse of discretion. [Citation.] 'That is, a reviewing court will disturb the

trial court's decision to impose a particular condition of probation only if, under all the circumstances, that choice is arbitrary and capricious and is wholly unreasonable.' " (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1132.) E.V. cannot show an abuse of discretion.

Applying the *Lent* test here, the People do not dispute E.V.'s argument that the alcohol testing condition has no relationship to the crimes E.V. admitted to, thereby meeting the first *Lent* prong. We agree.

As for the second *Lent* prong—that the condition relates to conduct which is not in itself criminal—E.V. fails to address it altogether in his briefs. We construe E.V.'s failure to address the second *Lent* prong as an implied concession that the prong is not satisfied. (See *Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 529 [appellant "effectively concedes" issue by failing to address it in brief]; *Glendale Redevelopment Agency v. Parks* (1993) 18 Cal.App.4th 1409, 1424 [appellants "impliedly concede" an issue by failing to address it]; see also *People v. Bouzas* (1991) 53 Cal.3d 467, 480 [argument was conceded by the People, who "ignored [the] point in their brief and at oral argument"].)

In any event, and notwithstanding that concession, we would still conclude that the condition fails the second *Lent* prong. *In re Kacy S.* (1998) 68 Cal.App.4th 704 (*Kacy S.*) is directly on point. There, the juvenile court imposed on two minors as a condition of probation conditions that each " 'submit to urine testing to determine the presence of alcohol and illegal drugs.' " (*Kacy S.*, *supra*, 68 Cal.App.4th at pp. 707–708.) Although there was no indication in the minors' offense or social histories of substance abuse, the appellate court concluded that the testing condition was authorized by

18

section 729.3.[4]  (*Id.* at pp. 708–709.)  It additionally determined that the condition was permissible under *Lent*.  (*Id.* at pp. 709–710.)  With respect to the second *Lent* prong, *Kacy S.* explained that the urine testing condition related to conduct which was itself criminal because it was "designed to detect the presence of substances whose use by minors is *unlawful*."  (*Id.* at p. 710, citing Cal. Const., art. XX, § 22 [prohibiting alcohol consumption by a minor].)  Like *Kacy S.*, we conclude the testing condition here directly relates to conduct which is itself criminal—the unlawful use or alcohol by a minor.

Given our conclusion that the testing condition fails the second *Lent* prong, we deem the alcohol testing condition valid under *Lent*.  (See *Ricardo P.*, *supra*, 7 Cal.5th at p. 1118 [" 'all three prongs [of the *Lent* test] must be satisfied before a reviewing court will invalidate a probation term.' "].)  It is thus unnecessary for us to consider E.V.'s arguments regarding the third prong.

But even if we were to consider those arguments, we would still conclude that the alcohol testing condition is valid.  According to E.V., the alcohol testing condition meets the third prong because the condition is not "reasonably related to preventing his future criminality."  We disagree.  Again, *Kacy S.* is on point.  There, the court observed that, in enacting section 729.3, the Legislature expressly declared that alcohol and drug abuse are among " '[t]he precursors of serious criminality by juveniles.' "  (*Kacy S.*, *supra*, 68 Cal.App.4th at pp. 708–709, fn. 2; see Stats. 1989, ch. 1117, § 1,

---

[4]     Section 729.3 states:  "If a minor is found to be a person described in Section 601 or 602 and the court does not remove the minor from the physical custody of his or her parent or guardian, the court, as a condition of probation, may require the minor to submit to urine testing upon the request of a peace officer or probation officer for the purpose of determining the presence of alcohol or drugs."

subd. (a)(2); see also *id.*, § 1, subd. (a)(1) ["The problem of juvenile delinquency should be addressed at its inception rather than after it has progressed to serious criminality."].) Thus, the testing condition was reasonably related to future criminality, thereby failing the third prong of the *Lent* formulation. (*Kacy S.*, at p. 710.) For the reasons set forth in *Kacy S.*, we conclude that the alcohol testing condition is reasonably related to deterring E.V.'s future criminality. Indeed, as the People assert, "given [E.V.'s] admission of prior substance abuse—marijuana—the condition was more warranted than in . . . *Kacy S.* . . , where the minor[s'] history did not reflect any use of illicit substances." Accordingly, the alcohol testing condition also fails at the third prong of the *Lent* test.

E.V. acknowledges *Kacy S.*'s holding, but argues the case was decided 25 years ago and should be revisited in light of *Ricardo P.* In the first place, E.V. makes no attempt to explain *Ricardo P.*, much less demonstrate how it undermines *Kacy S.* E.V.'s failure to support his claim with cogent legal argument allows us to deem his claim forfeited. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail."].)

E.V.'s claim is also unavailing. We do not see anything in *Ricardo P.* that undermines the analysis in *Kacy S.* In *Ricardo P.*, the high court held that a warrantless electronic search condition imposed on a minor was not reasonably related to future criminality where the record contained "no indication that [the minor] had used or will use electronic devices in connection with drugs or any illegal activity." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1116.) As the court explained, "*Lent*'s requirement that a probation

20

condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id.* at p. 1122.) Since the sweeping electronics search condition imposed "a very heavy burden on privacy with a very limited justification," it was not " ' "*reasonably related to future criminality*" ' " and was therefore invalid under *Lent*. (*Id.* at p. 1124.)

To the extent E.V. suggests that the electronics search condition in *Ricardo P.* is similar to the alcohol testing condition here, we disagree. Unlike an electronics search condition that intrudes upon a range of otherwise lawful activity, the drug and alcohol testing condition here relates solely to discovering unlawful behavior by the minor, as explained above. In addition, the burdens imposed by the testing condition are proportional to achieving the legitimate goal of preventing future criminality by monitoring E.V.'s drug or alcohol use and establishing the means for early intervention to aid in his rehabilitation. (See *Ricardo P.*, *supra*, 7 Cal.5th at p. 1122 [" 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation] so long as they are 'reasonably directed at curbing [the defendant's] future criminality.' "].)

In sum, the alcohol testing condition is valid under *Lent*.

## DISPOSITION

The phrase "maintain satisfactory grades in the grading system utilized by the youth's school" in probation condition no. 1 is modified to read: "maintain passing grades (meaning not failing, such as a D or above in an A through F grading system) in each graded subject."

Probation condition no. 4 is modified to require the participation of E.V.'s parents in counseling with E.V.

21

Probation condition no. 9 imposing the $100 restitution fine is stricken. As modified, the dispositional order is affirmed.

_____

RICHMAN, J.

We concur.

_____

STEWART,  P. J.

_____

DESAUTELS, J.

(A171123N)